276 So.2d 25 (1973)
In re ADVISORY OPINION TO the GOVERNOR.
No. 43434.
Supreme Court of Florida.
April 3, 1973.
*26 Edgar M. Dunn, Jr., Gen., Counsel, and Robert T. Mounts, Asst. Gen. Counsel, Tallahassee, for Governor Reubin O'D. Askew.
Talbot D'Alemberte, Miami, as amicus curiae.
PER CURIAM.
Honorable Reubin O'D. Askew
Governor of Florida
The Capitol
Tallahassee, Florida 32304
Dear Governor:
We have the honor to acknowledge your communication of February 26, 1973, requesting our opinion upon a question affecting your executive powers and duties as authorized by Section 1(c) of Article IV, Florida Constitution (F.S.A.).
Omitting the formal parts, your letter reads as follows:
"It is my constitutional duty to fill by appointment vacancies in judicial office. Section 11 of Article V (Revised) of the Florida Constitution, 1968 Revision, provides:
"(a) The governor shall fill each vacancy in judicial office by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election, one of not fewer than three persons nominated by the appropriate judicial nominating commission. An election shall be held to fill that judicial office for the term of the office beginning at the end of the appointed term. The nominations shall be made within thirty days from the occurrence of a vacancy unless the period is extended by the governor for a time not to exceed thirty days. The governor must make the appointment within sixty days after the nominations have been certified to him.
"(b) There shall be a separate judicial nominating commission as provided by general law for the supreme court, each district court of appeal, and each judicial circuit for all trial courts within the circuit.
*27 "In accordance with Section 11(b) above, separate judicial nominating commissions have been established by general law (Chapter 72-404, Laws of Florida; Section 43.29, Florida Statutes, 1972 Supplement, F.S.A.) in conformance with Section 20(c) (5)-(7) of Article V (Revised), which provides as follows:
"(c)(5) Each judicial nominating commission shall be composed of the following:
"a. Three members appointed by the Board of Governors of the Florida Bar from among the Florida Bar members who are actively engaged in the practice of law with offices within the territorial jurisdiction of the affected court, district or circuit;
"b. Three electors who reside in the territorial jurisdiction of the court or circuit appointed by the governor; and
"c. Three electors who reside in the territorial jurisdiction of the court or circuit and who are not members of the bar of Florida, selected and appointed by a majority vote of the other six members of the commission.
"(6) No justice or judge shall be a member of a judicial nominating commission. A member of a judicial nominating commission may hold public office other than judicial office. No member shall be eligible for appointment to state judicial office so long as he is a member of a judicial nominating commission and for a period of two years thereafter. All acts of a judicial nominating commission shall be made with a concurrence of a majority of its members.
"(7) The members of a judicial nominating commission shall serve for a term of four years except the terms of the initial members of the judicial nominating commissions shall expire as follows:
"(a) The terms of one member of category a.b. and c. in subsection (c)(5) hereof shall expire on July 1, 1974;
"(b) The terms of one member of category a.b. and c. in subsection (c)(5) hereof shall expire on July 1, 1975;
"(c) The terms of one member of category a.b. and c. in subsection (c)(5) hereof shall expire on July 1, 1976.
"In accordance with subsection (c)(5) above, it is my constitutional duty to appoint three electors who reside in the territorial jurisdiction of the court or circuit to serve as members of each judicial nominating commission. It is also my constitutional duty to commission each member of the judicial nominating commissions, regardless of the appointing authority. Section 1(a), Article IV, of the Florida Constitution, 1968 Revision, provides in part:
"`(a) ... [The Governor] shall take care that the laws be faithfully executed, commission all officers of the state and counties... .' (Emphasis theirs)
"Prior to the effective date of the revised Article V (January 1, 1973), the power to fill by appointment vacancies in judicial office was vested exclusively in the Governor without limitation, pursuant to Section 1(f) of Article IV and Section 14 of the old Article V, of the Florida Constitution; these sections provide:
"[Section 1(f)] When not otherwise provided for in this constitution, the governor shall fill by appointment any vacancy in state or county office for the remainder of the term of an appointive office, and for the remainder of the term of an elective office if less than twenty-eight months, otherwise until the first Tuesday after the first Monday following the next general election.
"[Section 14] Vacancies in office of judge, how filled.  When the office of any judge shall become vacant from any cause, the successor to fill such vacancy shall be appointed or elected only for the unexpired term of the judge whose death, resignation, retirement, or other cause created such vacancy.
*28 "In addition, Section 10, of the old Article V, provided in part:
"... [I]n event of vacancy in the office of County Solicitor, Clerk or other officer of the Court of Record in and for Escambia County, Florida, from any cause, the successor to fill such vacancy shall be appointed by the Governor to serve for the unexpired term of such office which has become vacant.
"The two provisions of the old Article V set forth above were adopted, in 1956, as part of the Florida Constitution of 1885. Section 7, Article IV, of the Florida Constitution of 1885, provided as follows:
"Section 7. Vacancies in office; appointments.  When any office, from any cause, shall become vacant, and no mode is provided by this Constitution or by the laws of the State for filling such vacancy, the Governor shall have the power to fill such vacancy by granting a commission for the unexpired term.
"It was apparent to me upon assuming office that the power to fill vacancies in judicial offices by appointment was historically and constitutionally vested in the Governor as an executive function. While the previous constitutional scheme had produced many able and qualified members of the judiciary, it was apparent to all who had studied the method of judicial selection in Florida that improvements in the Florida Constitutional scheme could be made.
"Accordingly, your judicial notice is requested of the fact that by Executive Order Number 71-40A, dated July 23, 1971, I established judicial nominating councils and provided rules for their operation. These councils operated successfully under these rules until the effective date of the revised Article V, and were of material assistance to me in the exercise of the power of appointment. In large part, the experience and membership of the judicial nominating councils have now been carried over to the judicial nominating commissions which have been elevated to constitutional status.
"It has come to my attention that there is some doubt on the part of those serving on the newly established commissions, as to rules governing their operation, because the previous executive order governing the operation of the councils is no longer applicable. There does not appear to be any express provision in the present Florida Constitution directly relating to this question.
"In view of the provisions of the Constitution which I have heretofore related, I am in doubt as to whether I, as Governor, have the authority to prescribe uniform rules governing the operation of the judicial nominating commissions. I have the honor, therefore, to request your written opinion on the following questions:
"(1) Is the function of the judicial nominating commissions an executive function, which cannot be limited by legislative act?
"(2) If the answer to the question above is in the affirmative, does the Governor have the inherent or implied power to establish rules governing the operation of the nominating commissions, consistent with applicable provisions of the Florida Constitution?
"(3) If the answer to question number (1) is in the affirmative, but the answer to question number (2) is in the negative, do the judicial nominating commissions have inherent or implied power to make rules governing their operation, consistent with applicable provisions of the Florida Constitution?
"(4) If the answer to question number (3) is in the affirmative, is there any requirement that the rules be uniform throughout the state?"
In answering the first question, we should first review the history of Fla. Const. Art. V, § 11, F.S.A.
In the deliberations of the Florida Constitutional Revision Commission, it was proposed that judicial nominating commissions *29 be created to screen applicants for judicial appointments within their respective juristions and to nominate the three best qualified persons to the Governor for his appointment. The commissions were to be an arm of the executive appointive power to supplant, at least in part, the Governor's so-called "patronage committee" composed of political supporters, to insure that politics would not be the only criteria in the selection of judges, and to increase generally the efficiency of the judicial appointive process. Working Papers, Fla. Const. Rev. Comm., Vol. XI, p. 169, et seq. (Minutes on Amendment No. 164, December 12, 1966).
By Executive Order 71-40A, on July 23, 1971, you established judicial nominating councils and prescribed rules for their operation. The stated objectives of this action included the premise that only the most qualified, conscientious and dedicated persons should be appointed to serve as judicial officers. In describing the nature and purpose of these nominating councils, the executive order stated that the high quality of the judiciary could best be maintained by using:
"... in aid of the constitutional discretion reposed in the Governor, a non-partisan advisory council on judicial selection, composed of outstanding representatives of The Florida Bar and the public in general, to nominate those eligible persons who are found to be most qualified to serve the public as judicial officers." Executive Order 71-40A, supra.
At the time the executive order was issued, there was no statute governing the process through which the Governor made appointments to the judiciary. Indeed, under the provisions of the existing Fla. Const., art. IV, § 1(f), and § 7, and Art. V, § 14, (1885), F.S.A., the Legislature could not have enacted laws on the subject area of the executive order. See Westlake v. Merritt, 85 Fla. 28, 95 So. 662 (1923). This was an executive function, pure and simple, and limitations could not be placed on that executive function.
In construing a constitutional provision, the words should be given reasonable meanings according to the subject matter, but in the framework of contemporary societal needs and structure. Such light may be gained from historical precedent, from present facts, or from common sense. State ex rel. West v. Gray, 74 So.2d 114, p. 116 (Fla. 1954). Further light may be shared by examination of the purpose the provisions was intended to accomplish or the evils sought to be prevented or remedied. Amos v. Mathews, 99 Fla. 1, 126 So. 308 (1930).
It was upon this background and experience that the merit system for selecting nominees for judicial appointment gained popular and constitutional acceptance. The Revised Article V of the Florida Constitution, which took effect January 1, 1973, established a judicial selection system substantially as instituted by you under your Executive Order 71-40A. However, the judicial nominating commissions are elevated to constitutional stature and permanence. The process of non-partisan selection has been strengthened even further because nominations made by the judicial nominating commissions have now been made binding upon the Governor, as he is under a constitutional mandate to appoint "one of not fewer than three persons nominated by the appropriate judicial nominating commission." Moreover, the Governor must make the appointment within sixty days after the nominations have been certified to him. Fla. Const., art. V (Rev.), § 11(a), F.S.A. However, this same provision confers upon the Governor the express power to make the final and ultimate selection by appointment.
The appointment of a judge is an executive function and the screening of applicants which results in the nomination of those qualified is also an executive function. It is the prerogative of the Legislature to provide for the number of persons to serve on each judicial nominating commission and the method of their selection. Once the judicial nominating commissions have been established by the Legislature *30 they become a part of the executive branch of government. The function of the commissions being inherently an executive function, such cannot be limited by legislative action.
The legislative role in the appointment of judges has been completed with the enactment of Fla. Stat. § 43.29, F.S.A., which authorizes the commissions in accordance with the requirements of Fla. Const., art. V, § 11(b), F.S.A. Of course, resignations under Fla. Stat. § 99.012, F.S.A. (Resign to Run Law) or under similar circumstances do not create a vacancy which activates the duties of the commissions or empower the Governor to make direct appointments.
Your second question is answered in the negative. The purpose of the judicial nominating commission is to take the judiciary out of the field of political patronage and provide a method of checking the qualifications of persons seeking the office of judge. When the commission has completed its investigation and reached a conclusion, the persons meeting the qualifications are nominated. In this respect the commissioners act in an advisory capacity to aid the Governor in the conscientious exercise of his executive appointive power.
The preservation of the inherent powers of the three branches of government, free of encroachment or infringement by one upon the other, is essential to the effective operation of our constitutional system of goverment. See Fla. Const. art. II, § 3, F.S.A. This doctrine is designed to avoid excessive concentration of power in the hands of one branch. Simmons v. State, 160 Fla. 626, 36 So.2d 207 (Fla. 1948); Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892 (1944); Sheffey v. Futch, 250 So.2d 907 (Fla.App. 4th, 1971); State v. Barquet, 262 So.2d 431 (Fla. 1972). As a corollary to the doctrine of separation of powers, the executive branch under the Florida Constitution is empowered to fill by appointment vacancies in judicial office. Fla. Const., art. V (Rev.), § 11(a), F.S.A.
This appointive power is diluted by the Constitution to the extent that a nomination must be made by the appropriate commission, unrestrained by the influence of the Governor. To allow the Governor to guide the deliberations of the commissions by imposing rules of procedure could destroy its constitutional independence. This does not preclude him from making recommendations concerning rules.
Seeking to remove some of the discretion of the Governor's office in the appointment of judicial officers is an apparent goal of the people which can best be attained by providing discretion to their commissions to promulgate rules of procedure for their hearings and findings, independent of any of the three standard recognized divisions of state government. While the function of the commissions is inherently executive in nature, the mandate for the commissions comes from the people and the Constitution, not from the Legislature, the Governor, or the Courts.
Thus, the answer to your third question must be in the affirmative. The power and duty for promulgating rules for the commissions must rest with the members of the commissions. To serve the purposes sought by the people, it is necessary that the commissions remain independent. As the ultimate choice of judges is left to the people through the electoral process (Fla. Const., art. V, § 10(a), F.S.A.), the people have chosen to have a voice in the choice of interim judges, appointed to fill out unexpired terms.
The fourth and final question which you have raised must be answered in the negative. There is nothing in the constitutional mandate creating these commissions that requires uniformity of procedure among the various commissions.
In summary, the judicial nominating commissions are a part of the executive branch of government performing an executive function which cannot be limited by legislative act. The Governor has no power to establish rules governing the operation *31 of the nominating commissions, as the exercise of such a power might tend to curtail the constitutional independence of the commissions. The power and duty for promulgating rules for the commissions must rest with the members of the commissions. These rules, for the various commissions, are not required to be uniform throughout the state.
 Very respectfully,
 VASSAR B. CARLTON
 Chief Justice
 B.K. ROBERTS
 RICHARD W. ERVIN
 JAMES C. ADKINS
 JOSEPH A. BOYD
 DAVID L. McCAIN
 HAL P. DEKLE,
 Justices