823 So.2d 185 (2002)
THE JUSTICE COALITION, a Florida not-for-profit corporation, and Ted Hires, Appellants,
v.
THE FIRST DISTRICT COURT OF APPEAL JUDICIAL NOMINATING COMMISSION, an agency of the Executive Branch, and Ana Cristina Martinez, in her official capacity as Chair of the First District Court of Appeal Judicial Nominating Commission, Appellees.
No. 1D01-3484.
District Court of Appeal of Florida, First District.
July 16, 2002.
*186 Peter Antonacci and Chanta G. Combs of Gray, Harris & Robinson, P.A., Tallahassee, for Appellants.
Carl R. Pennington, Jr. of Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., Tallahassee, for Appellees.
WOLF, J.
Appellants, The Justice Coalition and Ted Hires (collectively referred to as "the Coalition"), are appealing from a final order dismissing their action seeking certain records from the appellees, The First District Court of Appeal Judicial Nominating Commission and Ana Cristina Martinez in her official capacity as chair of the nominating commission (collectively referred to as "the JNC"). Specifically, the Coalition sought vote sheets, ballots, tally sheets, and members' notes. We essentially have two issues in front of us: 1) whether the documents sought by appellants were subject to public disclosure pursuant to the state constitution, and 2) whether the JNC was required to comply with the requirements of chapter 119, Florida Statutes. We hold that none of the documents sought are subject to public disclosure. The vote sheets, ballots, and tally sheets are an essential part of the deliberation process exempted from disclosure pursuant to article V, section 11(d). Members' individual notes are not records or proceedings of the nominating commission. We also determine that judicial nominating commissions are not subject to chapter 119, Florida Statutes, and therefore, they do not have to adopt a retention schedule for the requested items. We, therefore, affirm the decision of the trial court.
*187 Appellants made a public records request to the JNC through Ana Cristina Martinez, the Chairwoman, and Elizabeth White, a member. White produced several documents in response to the public records request, but specifically refused to produce her personal notes made during the deliberation process. Likewise, Martinez produced several documents, but she refused to produce JNC members' personal notes and vote sheets made during the deliberation process.
On February 28, 2001, the Coalition filed suit against the JNC and Martinez, in her official capacity as the JNC's Chairwoman. Specifically, the complaint alleged that the JNC is an agency in the executive branch of state government, that JNC members took notes during their investigations of the applicants' background and "used these notes as a basis to eliminate certain applications and block those applicants from further consideration by the JNC," and that the JNC failed to promulgate a record retention schedule. The documents specifically requested in the complaint were "members['] notes made prior to and during candidate interviews, vote sheets, ballots and ballot tally sheets" used by the JNC in consideration of judicial candidates.[1]
On July 23, 2001, the trial court issued its order dismissing the Coalition's complaint with prejudice, specifically ruling as follows:
1. Chapter 119, Florida Statutes (2000), does not apply to the JNC and Martinez.
2. The documents sought by the Coalition, including the notes of individual JNC members, do not constitute public records.
3. The requested records constitute an integral part of the deliberations of the commission and are, therefore, expressly exempted by the Constitution.
4. Disclosure of the records would publicize the JNC's ranking of the nominees, thereby contravening the JNC's rules of procedure.
5. The Coalition does not have a clear legal right to compel performance of a legal duty, thereby rendering its requests for mandamus relief moot.
The Florida Constitution addresses the right to access public records of the JNC in two separate sections: article I, section 24, and article V, section 11. In article I, section 24, Access to public records and meetings, the Constitution generally affords the broad right to inspect any non-exempt public record created or received in official state business:
(a) Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution.
Art. I, § 24, Fla. Const. (emphasis added). More specifically, article V, section 11, Vacancies, establishes the JNC as an independent entity, not governed by any one branch of government. Additionally, it provides public access to all proceedings *188 and records with an exception for "deliberations":
(d) There shall be a separate judicial nominating commission as provided by general law for the supreme court, each district court of appeal, and each judicial circuit for all trial courts within the circuit. Uniform rules of procedure shall be established by the judicial nominating commissions at each level of the court system. Such rules, or any part thereof, may be repealed by general law enacted by a majority vote of the membership of each house of the legislature, or by the supreme court, five justices concurring. Except for deliberations of the judicial nominating commissions, the proceedings of the commissions and their records shall be open to the public.

Art. V, § 11(d), Fla. Const. (emphasis added).
While article I, section 24, and article V, section 11 of the Florida Constitution are applicable to our inquiry, chapter 119, Florida Statutes is not.
The JNC is not an agency subject to chapter 119. Section 119.011(2) defines "agency" as:
[A]ny state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law including, for the purposes of this chapter, the Commission on Ethics, the Public Service Commission, and the Office of Public Counsel, and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.
(Emphasis added.)
Constitutional officers do not generally fall under the chapter 119 definition of "agency." See Times Pub. Co. v. Ake, 660 So.2d 255 (Fla.1995) (holding that clerks of circuit courts, when acting under their article V powers, are not subject to chapter 119); Locke v. Hawkes, 595 So.2d 32 (Fla.1992) (holding that legislature is not subject to chapter 119). In Locke v. Hawkes, the supreme court concluded that chapter 119 applied only to agencies subject to legislative control, which did not include the legislature itself or the judiciary. Id. at 36. Specifically, the supreme court held,
We find that the definition of agency in section 119.011, while not intended to apply to the legislature ... applies particularly to those entities over which the legislature has some means of legislative control, including counties, municipalities, and school boards, and state agencies, bureaus, and commissions, and private business entities working for any of these public entitles and officials.
Id. Thereafter, in 1993, article I, section 24 of the Florida Constitution was amended to include the three branches of government; however, all previous exemptions, including that in article V, section 11(d), were still in place. Art. I, § 24(d), Fla. Const. Moreover, section 119.011(2) was not amended to include the judiciary, the legislature, or independent constitutional entities. Rather, these entities adopted their own rules for public records. See, e.g., Fla. R. of Jud. Admin. 2.051 (providing public access to judicial records which are not exempted); Fla. Dist. Ct. Jud. Nominating Comm'n R., § X (requiring the JNC to retain and submit under seal specific papers to Florida Bar or Governor).
Unlike the other constitutional entities mentioned in section 119.011, the Florida Constitution requires the JNC to enact its own procedures: "Uniform rules of procedure shall be established by the judicial nominating commissions at each level of the court system." Art. V, *189 § 11(d), Fla. Const. Although the legislature and the supreme court have the power to repeal such procedures, they have no power to enact procedures requiring record retention beyond that already imposed by the JNC rules of procedure. See Fla. Dist. Ct. Jud. Nominating Comm'n R., § X. In the same vein, a court cannot, as requested by the Coalition, amend the JNC rules to require that the JNC keep a record retention schedule, "privilege log," or accounting of all documents not retained.
In determining that the JNC was not subject to chapter 119, the trial court relied on Kanner v. Frumkes, 353 So.2d 196 (Fla. 3d DCA 1977), and In Re Advisory Opinion to the Governor, 276 So.2d 25 (Fla.1973). In Kanner v. Frumkes, the court addressed an analogous question of law: Whether Florida's Government in the Sunshine Law, chapter 286, applied to a judicial nominating commission. There the court reasoned that the judicial nominating commission's function and authority could not be limited by legislative act. In finding that the JNC was not subject to the Sunshine Law, the court explained:
The function of the judicial nominating commissions being executive in nature and the mandate therefor coming from the Florida Constitution [article V, section 11], not from the legislature, the governor or the judiciary, it is clear that these commissions are not subject to Section 286.011, Florida Statutes (1975).
Id. at 197. In In Re Advisory Opinion to the Governor, the supreme court held that judicial nominating commissions could not be limited by legislative act, and the court advised that the Governor had no power to establish rules governing the operation of the commissions. In Re Advisory Opinion to the Governor, 276 So.2d at 25. The 1984 revision to article V, section 11 removed the total discretion of the governor's office by providing discretion to the commissions to promulgate rules of procedure for their hearings and findings, independent of any of the three standard recognized divisions of state government. Id. at 30; see also Op. Atty. Gen. No. 77-65, 1977 WL 26578, 2 (Fla.A.G.1977) (finding Constitutional Revision Committee not subject to Administrative Procedures Act: "To permit one branch of government to impose rules of procedure upon another coordinate constitutional branch or entity would destroy the constitutional independence of such branch or entity.").
Based on Kanner and In Re Advisory Opinion to the Governor, the trial court was correct in finding as a matter of law that chapter 119 is inapplicable to the JNC. The Coalition argues that these cases are no longer valid because they were decided prior to the enactment of the constitutional provisions addressed above and before the decision in Locke. However, these cases continue to be cited favorably by the supreme court for issues relating to public access to government and separation of powers. See Florida Senate v. Florida Public Employees Council 79, AFSCME, 784 So.2d 404, 408 (Fla.2001); In re Advisory Opinion to the Governor, 600 So.2d 460 (Fla.1992); see also Kansas Attorney General's Opinion No. 94, 1982 WL 187743 (December 3, 1982).[2] Thus, *190 our analysis concerning the commission's duty to make disclosure must focus on the Florida Constitution and not chapter 119, Florida Statutes.
Article V, section 11 specifically exempts deliberations from public disclosure. As an initial matter, we must ascertain how broadly to construe the term "deliberations." In construing a constitutional provision, the starting point must be the language employed in the provision. See American Tobacco Co. v. Patterson, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). The words should be given reasonable meaning according to the subject matter and in the framework of modern societal usage and grammatical structure. State, Comm'n on Ethics v. Sullivan, 449 So.2d 315, 316 (Fla. 1st DCA 1984). This court must use common sense in construing the true intent of the provision. Id. The intention can be ascertained by determining the "evil sought to be prevented or remedied" in initiating enactment of the constitutional provision. Id.
The Coalition argues that deliberations are only oral, and therefore, deliberations cannot include documents such as the ones sought by its request. The word "deliberation" has not been defined by the legislature, nor has it been interpreted by Florida Courts. Black's Law Dictionary, however, defines "deliberation" as follows:
The act of carefully considering issues and options before making a decision or taking some action ... as by analyzing, discussing, and weighing evidence.
Black's Law Dictionary 438-439 (7th ed.1999). We reject the Coalition's assertion that deliberations are only oral.
The question of what constitutes a deliberation has been addressed in other jurisdictions. In Titus v. Shelby Charter Township, 226 Mich.App. 611, 574 N.W.2d 391 (1997), a Michigan court addressed an issue similar to the one presented here: Whether a transcript of a proceeding fell under the deliberation exemption of that state's Freedom of Information Act (FOIA). There, the township board of trustees held a closed session regarding the termination of a police officer. The Michigan FOIA exempted minutes of deliberations with respect to such subjects. The Michigan court concluded that the transcript of the session was exempt:
In this case ... the dialogue between board members during the session may be said to be part of the process of deliberating whether to terminate plaintiffs employment.... As such, the transcript is exempt from disclosure.
Id. at 393 (emphasis added). Cf. Springfield Local School District Board of Education v. Ohio Association of Public School Employees, 106 Ohio App.3d 855, 667 N.E.2d 458 (1995) (citing a dictionary definition; concluding that deliberation was a process).[3]
The JNC procedural rules are consistent with the interpretation of deliberation as a process occurring through proceedings:
All applications, and other information received from or concerning applicants, and all interviews and proceedings of *191 the commission, except for deliberations by the commission, shall be open to the public.
Fla. Dist. Ct. Jud. Nominating Comm'n R., § IV. This broad interpretation of "deliberation" is also consistent with the use of the word in other provisions of the Florida Statutes which contemplate that deliberations take place during proceedings and involve the use of documents or notes.[4]
The 1984 amendment to article V, section 11(d) was intended to provide public access to the JNC's workings (which historically were exempt from the Government in the Sunshine Law). At the same time, it is clear from the legislative staff analyses that the amendment was intended to exempt access to deliberation proceedings and deliberation records. The Senate Staff Analysis and Impact Statement explains the effect of the addition of the last sentence in article V, section 11(d):
The 26 judicial nominating commissions are viewed as independent constitutional bodies and each is therefore permitted to have its own rule and procedures ... [T]heir deliberations may be closed to the public and the press.
. . . .
The bill proposes an amendment to Article V, Section 11(d) ... for public access to all judicial nominating commission proceedings and records other than deliberations.

Fla. H.R. Comm. on Judiciary, HJR 1160 (final April 25, 1984)(on file with State Archives; emphasis added); accord Fla. S. Comm. on Judiciary C.S. for SB 94 (final April 25, 1984)(on file with State Archives).[5]
At trial, each party argued the public policy reasons for restricting access to those records and discussions pertaining to deliberations. The commentary following article V, section 11 in Florida Statutes Annotated succinctly summarizes the arguments for and against public access to JNC deliberations:
Attempts to open the deliberation portion of the process to the public have been met with resistance from many who believe it would be a chilling effect on the commission members' candor in discussing judicial candidates. Supporters of removing the confidentiality requirements have argued that the deliberations of the judicial nominating commissions should be open to the public to avoid the use of hearsay and rumors and to assure that the selection process is free of personal bias.
26 Fla. Stat. Ann. 32 (Supp.2002). Because the 1984 amendment to article V intentionally and purposely created an exemption *192 for deliberations, the public policy debate was ultimately won by those who opposed opening deliberations to the public.
It defies common sense to keep deliberations closed, but allow the disclosure of records made for or used during deliberations. To do so would circumvent the confidential nature of deliberations as specifically exempted by the Constitution. As such, the trial court was correct in interpreting this constitutional provision as exempting all records which "constitute an integral part of the deliberations of the commission." Therefore, all records pertaining to voting, including vote sheets, ballots, and ballot tally sheets are clearly part of the deliberation process.
Individual member's notes are not public record.[6] The supreme court has elaborated on what does and does not constitute a public record in Shevin v. Byron, Harless, Schaffer, Reid & Assocs., 379 So.2d 633 (Fla.1980). As here, the plaintiffs in Byron, Harless specifically sought documents related to potential applicants for a public position. The court interpreted "public record" as any material prepared in connection with official agency business that is intended to perpetuate, communicate, or formalize knowledge of some type. Id. at 640. The court specifically noted that materials prepared as drafts or notes which constitute mere precursors of governmental records, are not in themselves intended as final evidence of the knowledge to be recorded. Id. The court concluded that handwritten notes made during or shortly after interviews with job prospects did not constitute public records.
Florida courts have consistently held that under chapter 119 public employees' notes to themselves which are designed for their own personal use in remembering certain things do not fall within the definition of "public record." Lopez v. State, 696 So.2d 725 (Fla.1997).[7] This court addressed the issue of handwritten notes in Coleman v. Austin, 521 So.2d 247 (Fla. 1st DCA 1988). There the plaintiff made a request pursuant to chapter 119 for documents relating to his prosecution, and the trial court entered an order ruling that "handwritten notes and memoranda ... are not public records and need not be disclosed...." Id. at 248. Although this court held that the order erroneously excluded from disclosure memoranda which formalized knowledge and communicated information between public employees, we noted that "the contested documents involved in the present case include preliminary notes which are not public records under the standard announced in Byron, Harless."[8]Id. at 249. Here, unlike Coleman, *193 the Coalition has not made any request for memoranda between commissioners, but rather repeatedly requested "members' notes."
Similarly, in Times Publishing Company, Inc. v. City of St. Petersburg, 558 So.2d 487 (Fla. 2d DCA 1990), the court affirmed the trial court's finding that requested personal notes regarding negotiations between the city and a baseball team were not public records pursuant to the public records law. There, after reviewing the trial testimony, the depositions, arguments of counsel, and an in camera review of the notes of the City's participants the trial court found that "[t]hese notes served no governmental function," but "were merely the personal tools of recollection of the writer." Id. at 491-492.[9]
The JNC rules of procedure are consistent with the court's findings in Byron, Harless and Times Publishing. The rules delineate which documents shall be made available:
Each commission shall maintain continuous records of its proceedings. In order that such records may be safeguarded, the commission after completing its deliberations and submitting its recommendations to the governor, shall place all remaining applications, questionnaires and other investigative data in a file, sealed by the chair, and transmit the same to the office of The Florida Bar. The files will be available on a continuous basis to the commission upon request, but the files may be destroyed on a yearly basis.
Fla. Dist. Ct. Jud. Nominating Comm'n R., § X.[10] The rules do not require votes, notes, ballots, or tally sheets be made available.
In conclusion, we hold that the vote sheets, ballot tally sheets, and ballots are exempt under article V, section 11(d) of the Florida Constitution because they are part of the deliberation process. Notes of the individual commission members are not subject to public disclosure because they are not public record. Finally, in light of our discussion concerning the applicability of chapter 119, we also determine that the trial court correctly ruled *194 that the commission was not required to maintain a record retention schedule.
The decision of the trial court is affirmed.
MINER and DAVIS, JJ., concur.
NOTES
[1] Appellants were given an opportunity to amend their complaint but declined to do so.
[2] The Kansas opinion addressed the same issue as the one raised in Kanner and in the instant case. Citing In re Advisory Opinion and Kanner, it stated:

Although Supreme Court cases of our sister states have no precedential effect in Kansas, we do find the conclusion of the Florida courts to be uniquely persuasive .... [T]he Florida sunshine law is commonly known to be one of the most comprehensive of open meetings laws in the nation and the Florida courts are renowned for their liberal interpretations favoring public access. Even in such context, the state legislature was found to lack authority to mandate public meetings....[Similarly] the [Kansas] Constitution does not appear to authorize the legislature to impose such requirements on the internal operations of this constitutionally created body.
Id. at 2 (emphasis added).
[3] The Ohio court defined "deliberation" as "the act of weighing and examining the reasons for and against a choice or measure" or "a discussion and consideration by a number of persons of the reasons for and against a measure." Id. (citing Merriam-Webster's New International Unabridged Dictionary 596 (3d ed.)).
[4] See, e.g., § 40.50, Fla. Stat. (allowing jurors to take confidential notes during civil actions likely to exceed 5 days for later use during deliberations); § 380.05, Fla. Stat. (describing specific factors and data to be considered by Legislature during its deliberations regarding state land planning); § 447.205, Fla. Stat. ("The deliberations of the [public employees relations] commission in any proceeding before it are closed and exempt from the provisions of [Sunshine Law]"); § 489.107, Fla. Stat. (allowing qualified members to join in deliberations during disciplinary proceedings); § 905.24, Fla. Stat. ("Grand jury proceedings are secret, and a grand juror or an interpreter appointed pursuant to § 90.6063(2) shall not disclose the nature or substance of the deliberations").
[5] The legislative staff summaries and analyses were not part of the record, nor were they cited by the parties. However, they aid this court in interpreting the constitutional provisions at issue. See generally Ellsworth v. Insurance Co. of North America, 508 So.2d 395, 401 (Fla. 1st DCA 1987) (noting, although court's decision was not predicated on Legislative Staff Summary and Analysis, this particular type of extrinsic aid to statutory interpretation is accorded significant respect by Florida courts).
[6] We would note that strong arguments may be made that the individual members' notes are also an integral part of the deliberation process and that required disclosure would only force members to rely on their memories. It is unnecessary for us to reach this issue as we determine that the individual members' notes are not encompassed within the disclosure requirement.
[7] Accord Johnson v. Butterworth, 713 So.2d 985 (1998) (finding state attorney's outline of evidence, a proposed outline for trial, handwritten notes were not public records); Bryan v. Butterworth, 692 So.2d 878 (1997) (finding legal pads regarding Attorney General's impressions and strategy, sheets summarizing psychological reports prepared by paralegal for later use by AG, and annotated map prepared by AG were not "public records").
[8] Few courts have considered the issue of whether personal notes of officials are public records, but the majority have adopted a similar position. See, e.g., Courier-Journal v. Jones, 895 S.W.2d 6 (Ky.App.1995) (holding Governor's daily appointment schedule with notes were not subject to state FOIA); In State, ex rel. Mothers Against Drunk Drivers, v. Gosser, 20 Ohio St.3d 30, 485 N.E.2d 706, 710 (1985) (finding judge's personal notes regarding trial and sentencing hearing were not public records); American Fedn. of Govt. Emp., Local 2782 v. United States Dept. of Commerce, 632 F.Supp. 1272 (D.D.C.1986), aff'd 907 F.2d 203 (D.C.Cir.1990) (holding employees' personal notes not intended for distribution through usual agency channels are beyond the scope of the federal FOIA). But cf. Tingling v. Lang, 39 Misc.2d 338, 240 N.Y.S.2d 633 (1963) (allowing inspection of written notes and computations made in course of audit proceedings under state FOIA where court found notes formed a part of the file and inquiry and could have been used for guidance in final audit report).
[9] Martinez agreed to seal and retain the withheld documents until the courts determined whether those documents constitute public records. These documents are not part of the record, nor did the trial court review these sealed documents in camera. The Coalition had the burden of requesting an in camera inspection and failed to do so. See generally Times Publishing Company v. City of Clearwater, 27 Fla. L. Weekly D1073, n. 2, 2002 WL 944630 (Fla. 2d DCA May 10, 2002). Under the facts alleged in the Coalition's complaint, we fail to see the need for an in camera inspection because we hold that the members' notes never reached the status of public records and the remaining requested items are excluded under the deliberation process exception of article V, section 11(d) of the Florida Constitution.
[10] See also S.Ct. Jud. Nominating Comm'n R., § I ("The Commission may seek and shall receive information from interested persons and groups. All applications, and other written information received from or concerning applicants, and all interviews and proceedings of the Commission, except for deliberations by the Commission, shall be open to the public to the extent required by law.").