# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-4471
_____

FLORIDA DEPARTMENT OF
HEALTH, OFFICE OF MEDICAL
MARIJUANA USE, COURTNEY
COPPOLA, in her official capacity
as Director of the Office of
Medical Marijuana Use, SCOTT
RIVKEES, M.D., in his official
capacity as State Surgeon
General and Secretary of the
Florida Department of Health,
and THE STATE OF FLORIDA,

    Appellants,

    v.

FLORIGROWN, LLC, a Florida
limited liability company and
VOICE OF FREEDOM, INC., d/b/a
Florigrown,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

August 27, 2019

ON MOTION FOR CERTIFICATION

PER CURIAM.

The panel grants the motion for certified question. We determine that the following question proposed by appellant is one of great public importance:

> WHETHER THE PLAINTIFFS HAVE DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS THAT THE STATUTORY REQUIREMENTS OF VERTICAL INTEGRATION AND CAPS ON THE NUMBER OF MEDICAL MARIJUANA TREATMENT CENTER LICENSES AS SET FORTH IN SECTION 381.986(8), FLORIDA STATUTES, ARE IN DIRECT CONFLICT WITH ARTICLE X, SECTION 29, OF THE FLORIDA CONSTITUTION?

WOLF, MAKAR, and JAY, JJ., concur.

ON MOTION FOR REHEARING EN BANC

On the motion of a party, a judge in regular active service on the Court requested that a vote be taken on the motion in accordance with Florida Rule of Appellate Procedure 9.331(d)(1). All judges in regular active service that have not been recused voted on the motion. Less than a majority of those judges voted in favor of rehearing en banc. Accordingly, the motion for rehearing en banc is denied.

WOLF, LEWIS, MAKAR, and BILBREY, JJ., concur.

MAKAR, J, concurs with written opinion.

B.L. THOMAS, OSTERHAUS, JAY, and M.K. THOMAS, JJ., dissent.

B.L. THOMAS, J., dissents with written opinion.

RAY, C.J., and ROBERTS, ROWE, KELSEY, and WINOKUR, JJ., recused.

_____

MAKAR, J., concurring in the denial of rehearing en banc.

2

Florida's constitution grants the ultimate power to decide state policy to the people, who have chosen by citizens' initiative[1] to constitutionalize "Medical marijuana production, possession and use." Art. X, § 29, Fla. Const.; *see id.* art. XI, § 5(e) (providing that proposals to change the state constitution must be approved by sixty percent vote of the electors). In doing so, the people have in large measure elbowed out the legislative branch as the arbiter of medical marijuana policy by giving the Department of Health the compulsory and detailed authority to "issue reasonable regulations necessary for the implementation and enforcement" of the medical marijuana amendment to "ensure the availability and safe use of medical marijuana by qualifying patients." *Id.* art. X, § 29(d) ("Duties of the Department").

A subset of the Department's constitutional duties is to oversee all entities involved in the production and distribution of marijuana for medical use in Florida. Dubbed Medical Marijuana Treatment Centers (MMTCs), these include any:

> entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, ***or*** administers marijuana, products containing marijuana, related supplies, or educational materials to qualifying patients or their caregivers ***and*** is registered by the Department.

*Id.* § 29(b)(5) (emphasis added). The constitution requires that the Department establish "[p]rocedures for the registration of MMTCs that include procedures for the issuance, renewal, suspension and revocation of registration, ***and*** *standards* to ensure proper

---

[1] *See* P.K. Jameson & Marsha Hosack, *Citizen Initiatives in Florida: An Analysis of Florida's Constitutional Initiative Process, Issues, and Alternatives*, 23 FLA. ST. U. L. REV. 417, 418 (1995) ("Initiatives generally allow the public to bypass the legislature and reserve direct lawmaking power in the voters of the state. Citizens propose constitutional amendments by initiative, and the general electorate adopts or rejects the proposed amendment at the polls.").

*security, record keeping, testing, labeling, inspection, and safety.*"
*Id.* § 29(d)(1)c. (emphasis added).

As the highlighted language makes obvious, the people have lodged wide-ranging power and control in the Department's hands to set substantive standards for regulating MMTCs that protect the public by ensuring the security, safety and testing/inspection of medical marijuana production, possession and use in Florida. This constitutional authority is presumptively self-executing. *Fla. Hosp. Waterman, Inc. v. Buster*, 984 So. 2d 478, 486 (Fla. 2008) (noting that "modern doctrine favors the presumption that constitutional provisions are intended to be self-operating.") (citation omitted).[2] It requires no legislative action because it effects an immediate change in the law governing access to medical marijuana, establishes a detailed regulatory regime with definitions of key terms, and sets forth in reasonable detail the means for accomplishing its purpose without the need of legislation. *Id.* ("The amendment's language makes evident that it was intended to effect an immediate change in the law governing access to medical records without the need for legislative action.").

The Department's constitutional authority over medical marijuana production, possession and use does not entirely displace the legislature's role. That's because the amendment does not "limit the legislature from enacting laws *consistent* with this section." Art. X, § 29(e) (emphasis added).[3] Our constitution envisioned this type of inter-branch power-sharing arrangement by saying that the "powers of the state government shall be divided into legislative, executive and judicial branches. No person

---

[2] The reason for the presumption is that in its absence "the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people." *Buster*, 984 So. 2d at 486 (quoting *Gray v. Bryant*, 125 So. 2d 846, 851 (Fla. 1960)).

[3] Of course, "simply because the right conferred by the amendment could be supplemented by legislation does not prevent the provision from being self-executing." *Buster*, 984 So. 2d at 486.

4

belonging to one branch shall exercise any powers appertaining to either of the other branches *unless expressly provided herein.*" Art. II, § 3, Fla. Const. (emphasis added). The *people*–not our judicial panel—expressly granted to the executive branch (i.e., the Department of Health) a defined portion of what would otherwise have been the Legislature's plenary power to establish statewide medical marijuana policy, leaving room for limited legislation that is consistent with the amendment itself. The people, by limiting the legislative branch's policy-making role power over medical marijuana, have not done "exceptional violence" to their own right to petition the legislature for gap-filling, harmonious legislation; instead, the people have bypassed the legislature, directed the Department to implement their political will, art. I, § 1, Fla. Const. ("All political power is inherent in the people."), and corralled legislative power by limiting it to only "consistent" enactments (which is unsurprising given the potential for wayward legislation to frustrate the people's will), *Gray*, 125 So. 2d at 852 ("We have no reason to believe, and we do not intend to imply, that the legislature will not always follow the dictates of [the constitutional provision at issue]," but noting the possibility that a legislature might "fail to act in accordance with the [provision]" and thereby "frustrate the people's will.").

In light of the amendment's language and structure, the paramount question in this case—the only one that both parties urge that we answer—is whether legislation that limits registration to only MMTCs that are fully vertically-integrated is inconsistent with the amendment's language. The original panel unanimously agreed that section 381.986(8)(e), Florida Statutes, which requires full vertical integration, directly conflicts with the language in article X, section 29(b)(5). The former says that an MMTC "shall cultivate, process, transport, *and* dispense marijuana for medical use," while the later contrarily says that an MMTC is an entity that "acquires, cultivates, possesses, processes . . ., transfers, transports, sells, distributes, dispenses, *or* administers" medical marijuana. The power of the legislature does not include rewriting clear language in the constitution, transforming a disjunctive "or" into a conjunctive "and." The reason is that the use of "the word 'or' is usually, if not always, construed judicially as a disjunctive," the rare exception being where it is "necessary" to conform to the "clear intention" of its

5

drafters. *Pompano Horse Club, Inc. v. State*, 111 So. 801, 805 (Fla. 1927); *see also Telophase Soc'y of Fla., Inc. v. State Bd. of Funeral Dirs. & Embalmers*, 334 So. 2d 563, 565, 566–67 (Fla. 1976) (upholding disjunctive use of "or" where statute defined "funeral directing" as the "profession of directing or supervising funerals for profit, or the profession of preparing dead human bodies for burial or cremation by means other than embalming, or the disposition or shipping of dead human bodies, or the provision or maintenance of a place for the preparation of dead human bodies."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("The conjunctions *and* and *or* are two of the elemental words in the English language. Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. Competent users of the language rarely hesitate over their meaning.").

No evidence exists that the people via the elemental language of the medical marijuana amendment clearly intended a market limited to only a few fully vertically-integrated medical marijuana companies. Indeed, one looks in vain for *any* modern American commodities industry in which *all* sellers are fully-vertically integrated; partial vertical integration is common, but not the type of seed-to-store structure that section 381.986(8)(e) requires of all MMTCs. For this reason, the legislature cannot force every MMTC seeking registration to grow marijuana and then cultivate, process, package, transport, distribute, sell, and dispense medical marijuana. Prior to passage of the medical marijuana amendment it could advance such a market policy, but doing so now is inconsistent with the amendment's clear language to the contrary.

Because section 381.986(8)(e) so clearly conflicts with the constitution, en banc review is unwarranted and would serve only to further delay the inevitable, which is to allow for our supreme court to weigh in and definitively pass upon the matter, which the panel has promptly accommodated. The parties have signaled the importance of having the merits of the legal issue addressed, the

6

state moving for certification of one question on only that point of law,[4] which the panel has granted.

Until supreme court review occurs, the existing legislatively-established oligopolistic vertically-integrated market structure will remain operative due to all but certain stays of the trial court's and this Court's decisions. Even if the supreme court denies review, and the panel opinion becomes operative, no floodgates will open that threaten ruination on society—akin to *Reefer Madness*—as might be feared.[5] Properly regulated, medical marijuana serves an important public health goal in accord with the intent of a super-majority of Florida's voters. Remember, the people gave the

---

[4] The only certified question sought by the Department of Health, which was approved by the panel, is:

> Whether the plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims that the statutory requirements of vertical integration and caps on the number of medical marijuana treatment center licenses as set forth in section 381.986(8), Florida Statutes, are in direct conflict with Article X, section 29, of the Florida Constitution?

[5] This case is about medical marijuana, not the dangers of unrestricted recreational use highlighted in the 1936 film. *See Reefer Madness*, WIKIPEDIA, https://en.wikipedia.org/wiki/Reefer_Madness (last visited August 22, 2019). That said, marijuana law and policy is a deeply serious subject upon which profound questions remain. *See generally* Robert A. Mikos, *Marijuana Law, Policy, and Authority* 6 (2017) ("Given all the reasons to care about marijuana law and policy, policymakers face a host of questions about how they should regulate the drug: Is marijuana beneficial? What are its harms? Which of those benefits and harms should inform policy decisions? Should marijuana be allowed or banned, and if allowed, for whom? How can jurisdictions prevent diversion of the drug to non-approved uses? How do different policies affect the use of marijuana and any harms associated with such use? What are the costs of competing approaches to regulating marijuana?").

Department broad constitutionally-grounded powers to establish "standards to ensure proper security, record keeping, testing, labeling, inspection, and safety" in this new industry, a provision unaffected by the panel opinion and self-operative without *any* legislation. Art. X, § 29(d)(1)c. Had the legislature passed no law, the Department's constitutional mandate to bring about the orderly production, possession and use of medical marijuana in Florida remained the same. Nothing prevents the Legislature, of course, from enacting laws that are consistent with the people's directive.

Importantly, the panel opinion on the merits did nothing other than to say that limiting the medical marijuana marketplace to only a few vertically-integrated entities conflicts with the language of the constitution; no language in the amendment (or ballot summary for that matter)[6] compels MMTCs to be vertically-integrated and limited in number. A wide range of regulatory approaches remains available, none compelled by the panel's decision, which in no way obliges the Department to register street-level drug dealers or dorm-room pot cultivators. Instead, the only change will be that a broader and more competitive marketplace will develop, one that the Department—as supplemented by non-conflicting legislation—will actively regulate for the public's security and safety via its control over MMTCs. *See Fla. Dep't of Health v. Florigrown, LLC*, 44 Fla. L. Weekly D1744 (Fla. 1st DCA July 9, 2019) ("That the portion of the statute establishing a vertically-integrated industry structure is impermissible doesn't reduce or interfere with the Department of Health's ongoing regulatory authority to protect the public generally.") (Makar, J., concurring).

B.L. THOMAS, J., dissenting from the denial of hearing en banc.

---

[6] In its legal filings, the Department made no mention of the amendment's ballot summary, probably because (a) its language does not advance the Department's position and (b) the language of the constitution is what matters in assessing whether a conflict exists with section 381.986(8)(e).

The Governor, the Florida Department of Health, and four judges of this court think the panel opinion in this case is a matter of great public importance meriting en banc consideration. But by a 4-4 vote,[1] this court has decided that the monumental issue of whether the Florida Legislature and the Governor have the authority to regulate Medical Marijuana Treatment Centers ("MMTC") is not a case of great public importance meriting rehearing en banc before the entire court.[2] Thus, this court has now decided that the rational and careful policies enacted by the legislature and approved by the governor to regulate medical marijuana are temporarily invalid, *despite* the specific authority under the constitutional provision authorizing the legislative and executive branches to regulate medical marijuana under article X, section 29 of the Florida Constitution.

I respectfully but vigorously dissent from this court's decision declining to rehear this case en banc.

The federal government has categorized marijuana as a Schedule I drug, meaning it has a *high potential for abuse*, there is *no currently accepted medical use of the drug* in treatment in the United States, and there is a *lack of accepted safety* for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1)A-C, Schedule I(c)(10) (emphasis added). As the panel's dissenting opinion stated:

> The majority states that the injunction "allows the Department a reasonable period of time to exercise its duties under the constitutional amendment," [] but that is not how I read the injunction. Indeed, because the injunction states that the Department is "immediately"

---

[1] Two judges did not participate in the court's decision to deny rehearing en banc, Judges Winsor and Wetherell, having previously been confirmed by the United States Senate as United States District Judges for the Northern District of Florida. Judge Wetherell served on the original panel decision and dissented from the majority's decision to affirm the preliminary injunction issued by the circuit judge below.

[2] Five judges of this court recused themselves from consideration of this motion for rehearing en banc.

9

enjoined from registering or licensing MMTCs under the legislative scheme in section 381.986, Florida Statutes, it appears to me that *the injunction will create a regulatory vacuum that will need to be immediately filled by an entirely new regulatory scheme in order to avoid an unregulated marketplace for medical marijuana.*

*Fla. Dep't of Health v. Florigrown, LLC*, No. 1D18-4471, 2019 WL 2943329, at *6 n.4 (Wetherell, J., concurring in part and dissenting in part) (emphasis added) (citations omitted).

This is manifestly a case of great public importance as the erroneous panel decision will have a profound impact on public safety and is in violation of the separation of powers under article II, section 3 of the Florida Constitution, because the preliminary injunction usurps the constitutional authority of the of the legislature, which carefully considered and approved those policies, and the governor, who signed this legislation and has acted to implement those policies through the Department of Health. The concurring opinion further demonstrates this violation of the separation of powers by recommending an economic model for regulating medical marijuana, which is obviously within the sole policy-making authority of the legislative branch. ("As such, the public interest is best served, not by allowing an unconstitutional market structure to remain in place, *but to gravitate carefully and expeditiously away from the unlawful vertically-integrated oligopoly model to the non-integrated market structure the amendment envisions.*" (*Fla. Dep't of Health v. Florigrown, LLC*, No. 1D18-4471, 2019 WL 2943329, at *5 (Makar, J., concurring)) (emphasis added)).

As our supreme court has emphatically stated: "In the final analysis, '[t]he preservation of the inherent powers of the three branches of government, free of encroachment or infringement by one upon the other, is essential to the effective operation of our constitutional system of government." *Fla. Senate v. Fla. Pub. Empl. Council 79, AFSCME*, 784 So. 2d 404, 408 (Fla. 2001) (quoting *In re Advisory Opinion to the Governor*, 276 So. 2d 25, 30 (Fla. 1973)).

The amendment at issue *requires* the Department to adopt "[p]rocedures for the issuance, renewal, suspension and revocation

of registration of Medical Marijuana Treatment Centers and standards to ensure proper security, record keeping, testing, labeling, inspection, and safety." Art. X, § 29(d)(1)c., Fla. Const. A Medical Marijuana Treatment Center is defined in the Amendment as "an entity that acquires, cultivates, possesses, processes . . . transfers, sells, distributes, dispenses, or administers marijuana . . . and is registered by the Department." Art. X, § 29(b)(5), Fla. Const. The Amendment unambiguously states that "*[n]othing* in [the Amendment] *shall limit the legislature from enacting laws consistent with this section*." Art. X, § 29(e), Fla. Const. (emphasis added). The statute at issue is "consistent with this section" because it properly implements the constitutional amendment by correctly limiting the registration of Medical Marijuana Treatment Centers.

Thus, because there is no conflict between the statute and the amendment, the Appellees cannot prevail on the merits, the injunction is not in the public interest, and there is no "irreparable harm" in reversing the injunction. Quite the contrary, *the preliminary injunction will impose irreparable harm on the public* by injecting chaos and creating an unregulated environment for the use and abuse of marijuana.

The majority decision approving this injunction in part is contrary to the public interest, as the dissenting panel opinion noted:

> However, I respectfully dissent from the remainder of the opinion because, in my view, Appellees failed to establish that the portion of the injunction affirmed by the majority is in the public interest. . . . The portion of the injunction affirmed by the majority will effectively mandate an immediate change in the entire structure of the medical marijuana industry in Florida. Although such a change may ultimately be warranted, the trial court did not articulate—and Appellees did not show—how the public interest would be served by mandating this change through a preliminary injunction.

*Florigrown, LLC*, 2019 WL 2943329, at \*5-6 (Wetherell, J., concurring in part and dissenting in part) (emphasis added) (footnote omitted).

11

The preliminary injunction will result in the increased potential for the unregulated use of marijuana, a dangerous drug which has been shown in numerous studies to present a significant harm to both young people and others who may be now permitted unfettered access to this drug. *See* Nora D. Volkow, M.D., *Letter from the Director,* NATIONAL INSTITUTE ON DRUG ABUSE, (July 2019), https://www.drugabuse.gov/publications/research reports/marijuana/letter-director:

> Because marijuana impairs short-term memory and judgment and distorts perception, it can impair performance in school or at work and make it dangerous to drive. It also affects brain systems that are still maturing through young adulthood, so regular use by teens may have negative and long-lasting effects on their cognitive development, putting them at a competitive disadvantage and possibly interfering with their well-being in other ways. Also, contrary to popular belief, marijuana can be addictive, and its use during adolescence may make other forms of problem use or addiction more likely. Whether smoking or otherwise consuming marijuana has therapeutic benefits that *outweigh its health risks is still an open question that science has not resolved.*

(Emphasis added).

Without any proper factual findings or *any* showing of irreparable harm, the circuit court's preliminary injunction invalidates the comprehensive regulation of a controlled substance, Section 381.986(8)(a)1, Fla. Stat. (2017). The injunction endangers public safety and the physical and mental health of adults and children who will now likely have greater access to unregulated marijuana use and abuse. The preliminary injunction also violates settled law governing a trial court's authority to grant preliminary injunctions, which are an *"extraordinary remedy* which should be granted *sparingly." City of Jacksonville v. Naegele Outdoor Advertising Co.,* 634 So. 2d 750, 752 (Fla. 1st DCA 1994) (quoting *Thompson v. Planning Comm'n,* 464 So. 2d 1231 (Fla. 1st DCA 1985) (emphasis added)).

As argued by Appellants citing black-letter law, a "trial court must determine that (i) the movant is substantially likely to succeed on the merits, (ii) irreparable harm absent injunction is likely, (iii) an adequate remedy at law is unavailable, and (iv) the balance of the public interest favors the injunction." *Id.*; *see also St. Johns Inv. Mgmt. Co. v. Albaneze*, 22 So. 3d 728, 731 (Fla. 1st DCA 2009) (party seeking a temporary injunction bears the burden of providing substantial, competent evidence on each element).

I agree with Appellants that the trial court's order is fatally flawed "on almost every possible ground." But the majority opinion upholds a significant part of this fatally flawed injunction. This Court's decision denying rehearing en banc compounds that error.

The trial court's injunction and this Court's partial approval of the injunction have erroneously decided that *any entity* that engages in *any* of the defined activities described in the amendment may constitute a self-executing Medical Marijuana Treatment Center. But a fair reading of the amendment can only conclude that a "treatment center" cannot mean that anyone who merely "cultivates" marijuana is thereby entitled to *demand* registration under the amendment.

The contrary holding of the panel opinion approving the injunction also conflicts with the rationale of this court's prior decision in *Department of Health v. Redner*, in which we held that a person had no privilege under the amendment to grow his own marijuana:

> Mr. Redner argues, and the trial court held, that because Mr. Redner was a qualified patient, he had the right to possess and use marijuana, which included the whole growing plant and seeds. He argues the right to possess and use the whole growing plant and seeds includes the right to cultivate and process his own marijuana. This interpretation of section 29 is not supported by the plain language of the constitution and renders portions of the constitution meaningless. In addition, this interpretation ignores the detailed framework set forth by the drafters to establish the role that MMTCs play in producing and distributing medical

13

marijuana and to provide for the regulation of those MMTCs.

Mr. Redner's argument is not supported by the plain language of section 29, which provides qualified users (like Mr. Redner) with immunity from criminal or civil liability under Florida law for the "medical use of marijuana" that is "*in compliance*" with the amendment (emphasis added). Qualified users are permitted to acquire, possess, use, deliver, transfer, and administer marijuana in amounts that do not conflict with the Department's rules. Mr. Redner argues that the term "use" contained in the medical use definition permits him to cultivate and process marijuana. The term "use" is not defined by the amendment. However, it is clear, when one examines the entire amendment, that "use" does not mean "grow" or "process," as Mr. Redner argues.

In examining section 29 as a whole, we must recognize the distinctions made by the drafters between the activities permitted to be performed by MMTCs and the activities permitted to be performed by qualified patients. We must also recognize the role the drafters gave to MMTCs to play in the production and distribution of medical marijuana. The framers explicitly authorized MMTCs to cultivate, process, and distribute medical marijuana. Art. X, § 29(b)(5), Fla. Const. Unlike the express language concerning MMTCs, there is no explicit language authorizing qualified patients to grow, cultivate, or process marijuana. Had the drafters intended for qualified patients to be able to cultivate or process medical marijuana, that language would have been included in the definition of medical use; it was not.

When we read the constitutional provisions, as a whole, we find that the language of section 29 is clear, unambiguous, and addresses the issue on appeal. *A qualified patient's ability to use and possess marijuana does not include authorization to grow, cultivate, and/or process marijuana. Article X, section 29 of the Florida Constitution only authorizes MMTCs to grow, cultivate, and process marijuana for qualified patients.*

14

273 So. 3d 170, 172-73 (Fla. 1st DCA 2019) (emphasis added).

As noted by our Court in *Redner*, the logic of the panel opinion and the preliminary injunction conflict with the ballot summary provided to the voters who considered this amendment:

> We also look to the ballot summary to determine the purpose of the amendment and the will of the voters because a ballot summary provides the purpose of the amendment and has to present the scope of an amendment in order to be valid. *See Advisory Op. to Att'y Gen. re Term Limits Pledge*, 718 So. 2d 798, 804 (Fla. 1998) (if a ballot summary does not accurately describe the scope of the amendment, then it fails to accurately describe the purpose of the amendment). The Florida Supreme Court found the ballot summary for Article X, section 29 of the Florida Constitution fairly informed the voters of the purpose of the proposed amendment. *In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471, 478-79 (Fla. 2015). The ballot summary read as follows:

>> Allows medical use of marijuana for individuals with debilitating medical conditions as determined by a licensed Florida physician. Allows caregivers to assist patients' medical use of marijuana. The Department of Health shall register and regulate centers that produce and distribute marijuana for medical purposes and shall issue identification cards to patients and caregivers. Applies only to Florida law. Does not immunize violations of federal law or any non-medical use, possession or production of marijuana.

> *Id.* at 476. *There is no language contained in the ballot summary that would have allowed the voters to surmise that the passing of this amendment would permit qualified patients to cultivate and process their own medical marijuana.* Therefore, Mr. Redner's position is not consistent with the purpose of the amendment or the will of the voters.

15

273 So. 3d at 174 (emphasis added).

Given the logic and rationale of *Redner*, the preliminary injunction here may produce the inevitable conclusion that the amendment was approved under a flag of "false colors" when the ballot summary informed the voters that the legislature and governor *could* adopt and implement reasonable restrictions on the use of marijuana. *See Armstrong v. Harris*, 773 So. 2d 7, 16 (Fla. 2000) ("A ballot title and summary cannot 'fly under false colors' or hide the ball' as the amendment's true effect").

For all the above reasons, this Court should have agreed to rehear this case en banc and reverse the fatally flawed preliminary injunction. Thus, I dissent from the denial of rehearing en banc.

_____

Jason Gonzalez, Rachel Nordby, and Amber Stoner Nunnally of Shutts & Bowen LLP, Tallahassee; Joe Jacquot and John MacIver of the Executive Office of Governor Ron DeSantis, Tallahassee; and Louise Wilhite-St Laurent, General Counsel, Florida Department of Health, Tallahassee, for Appellants.

Katherine E. Giddings, BCS of Akerman LLP, Tallahassee, Jonathan S. Robbins of Akerman LLP, Fort Lauderdale, Ari H. Gerstin of Akerman LLP, Miami, and Luke Lirot, Clearwater, for Appellees.

John M. Lockwood, Thomas J. Morton, and Devon Nunneley of The Lockwood Law Firm, Tallahassee, for amici curiae DFMMJ Investments, LLC d/b/a Liberty Health Sciences, Acreage Florida, Inc., 3 Boys Farm, LLC d/b/a 3 Boys Farm, and MME Florida, LLC d/b/a MedMen.

James A. McKee of Foley & Lardner LLP, Tallahassee, for amici curiae Perkins Nursery, Inc., Deleon's Bromeliads, Inc., San Felasco Nurseries, Inc. d/b/a Harvest, and Better-Gro Companies, LLC d/b/a Columbia Care Florida.

William D. Hall, III and Daniel R. Russell, of Dean Mead & Dunbar, Tallahassee, for amicus curiae Dewar Nurseries, Inc.

16