PER CURIAM.
The Attorney General has requested that this Court review a proposed amendment to the Florida Constitution designed to protect people, especially youth, from addiction, disease, or other health hazards of using tobacco, including the corresponding financial impact statement. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we approve the amendment, the ballot title and summary, and the financial impact statement for placement on the ballot.
I. THE PROPOSALS
The text of the proposed amendment, the ballot title and summary, and the financial impact statement are set out individually below.
A. Proposed Amendment
The proposed amendment[1] provides as follows:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article X, Florida Constitution, is amended to add the following:
*1189 Section 27. Comprehensive Statewide Tobacco Education and Prevention Program. In order to protect people, especially youth, from health hazards of using tobacco, including addictive disorders, cancer, cardiovascular diseases, and lung diseases; and to discourage use of tobacco, particularly among youth, a portion of the money that tobacco companies pay to the State of Florida under the Tobacco Settlement each year shall be used to fund a comprehensive statewide tobacco education and prevention program consistent with recommendations of the U.S. Centers for Disease Control and Prevention (CDC), as follows:
(a) Program. The money appropriated pursuant to this section shall be used to fund a comprehensive statewide tobacco education and prevention program consistent with the recommendations for effective program components in the 1999 Best Practices for Comprehensive Tobacco Control Programs of the CDC, as such Best Practices may be amended by the CDC. This program shall include, at a minimum, the following components, and may include additional components that are also contained within the CDC Best Practices, as periodically amended, and that are effective at accomplishing the purpose of this section, and that do not undermine the effectiveness of these required minimum components:
(1)an advertising campaign to discourage the use of tobacco and to educate people, especially youth, about the health hazards of tobacco, which shall be designed to be effective at achieving these goals and shall include, but need not be limited to, television, radio, and print advertising, with no limitations on any individual advertising medium utilized; and which shall be funded at a level equivalent to one-third of each total annual appropriation required by this section;
(2) evidence-based curricula and programs to educate youth about tobacco and to discourage their use of it, including, but not limited to, programs that involve youth, educate youth about the health hazards of tobacco, help youth develop skills to refuse tobacco, and demonstrate to youth how to stop using tobacco;
(3) programs of local community-based partnerships that discourage the use of tobacco and work to educate people, especially youth, about the health hazards of tobacco, with an emphasis on programs that involve youth and emphasize the prevention and cessation of tobacco use;
(4) enforcement of laws, regulations, and policies against the sale or other provision of tobacco to minors, and the possession of tobacco by minors; and
(5) publicly-reported annual evaluations to ensure that moneys appropriated pursuant to this section are spent properly, which shall include evaluation of the program’s effectiveness in reducing and preventing tobacco use, and annual recommendations for improvements to enhance the program’s effectiveness, which are to include comparisons to similar programs proven to be effective in other states, as well as comparisons to CDC Best Practices, including amendments thereto.
(b) Funding. In every year beginning with the calendar year after voters approve this amendment, the Florida Legislature shall appropriate, for the purpose expressed herein, from the total gross funds that tobacco companies pay to the State of Florida under the Tobacco Settlement, an amount equal to fifteen percent of such funds paid to the State in 2005; and the appropriation *1190 required by this section shall be adjusted annually for inflation, using the Consumer Price Index as published by the United States Department of Labor.
(c) Definitions. “Tobacco” includes, without limitation, tobacco itself and tobacco products that include tobacco and are intended or expected for human use or consumption, including, but limited to, cigarettes, cigars, pipe tobacco, and smokeless tobacco. The “Tobacco Settlement” means that certain Settlement Agreement dated August 25, 1997, entered into in settlement of the case styled as State of Florida, et al. v. American Tobacco Company, et al., Case No. 95-1466 AH (Fla. 15th Cir. Ct.), as amended by Stipulation of Amendment dated September 11, 1998; and includes any subsequent amendments and successor agreements. “Youth” includes minors and young adults.
(d) Effective Date. This amendment shall become effective immediately upon approval by the voters.
B. Ballot Title and Summary
The ballot title for the proposed amendment is “Protect People, Especially Youth, From Addiction, Disease, and Other Health Hazards of Using Tobacco.” The summary for the proposed amendment states:
To protect people, especially youth, from addiction, disease, and other health hazards of using tobacco, the Legislature shall use some Tobacco Settlement money annually for a comprehensive statewide tobacco education and prevention program using Centers for Disease Control best practices. Specifies some program components, emphasizing youth, requiring one-third of total annual funding for advertising. Annual funding is 15% of 2005 Tobacco Settlement payments to Florida, adjusted annually for inflation. Provides definitions. Effective immediately.
C. Financial Impact Statement
The statement provides as follows:
This amendment requires the state government to appropriate approximately $57 million in 2007 for the Comprehensive Statewide Tobacco Education and Prevention Program. Thereafter, this amount will increase annually with inflation. This spending is expected to reduce tobacco consumption. As a result, some long-term savings to state and local government health and insurance programs are probable, but indeterminate. Also, minor revenue loss to state government is probable, but indeterminate.
II. STANDARD AND SCOPE OF REVIEW
The overall standard of review for the proposed amendment and the ballot title and summary are the same. In Advisory Opinion to the Attorney General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888 (Fla.2000), this Court summarized its standard of review in initiative petition cases as follows:
The Court’s inquiry, when determining the validity of initiative petitions, is limited to two legal issues: whether the petition satisfies the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot titles and summaries are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (1999). In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective on either ground. *1191 In determining the propriety of the initiative petitions, the Court does not review the merits of the proposed amendments.
Id. at 890-91 (citations omitted).
III. SINGLE SUBJECT REQUIREMENT
A. Applicable Law
Article XI, section 3, Florida Constitution, requires that an amendment proposed by initiative “embrace but one subject and matter directly connected therewith.” This single-subject limitation protects the State Constitution from “precipitous” and “spasmodic” changes. See Fine v. Firestone, 448 So.2d 984, 993 (Fla.1984). There are two purposes for the single-subject rule. First, the limitation prevents logrolling by “allowing] the citizens to vote on singular changes in our government that are identified in the proposal and to avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support.” Id. Second, it “prevents] a single constitutional amendment from substantially altering or performing the functions of multiple aspects of government.” Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000). In so doing, the single-subject rule ensures that the amendment’s impact on the Florida Constitution is limited and accurately disclosed.
 In determining compliance with the single-subject rule as to the first purpose, “this Court examines the amendment to determine whether it ‘may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.’” Advisory Op. to Att’y Gen. re Patients’ Right to Know About Adverse Med. Incidents, 880 So.2d 617, 620 (Fla.2004) (quoting Fine, 448 So.2d at 990). In determining compliance as to the second purpose, “a proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Id. We address each of these purposes in turn.
B. Application of Law
The proposed amendment complies with the single-subject rule. As shown below, it is not guilty of logrolling, and it embraces only one subject without imper-missibly altering or performing any governmental function in a substantial way.
1. Logrolling
Logrolling is “a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.” Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendments of Local Gov’t Comprehensive Land Use Plans, 902 So.2d 763, 766 (Fla.2005) (quoting High Speed Monorail, 769 So.2d at 369).
The proposed amendment does not suffer from logrolling. It addresses a single comprehensive plan for the education of youth about the health hazards related to tobacco. Although this plan includes a list of components such as advertising, school curricula, and law enforcement, all of these components are related to the single unifying purpose. It does not “combine subjects in such a manner as to force voters to accept one proposition they might not support in order to vote for one they favor.” Advisory Op. to Att’y Gen. re Fla.’s *1192 Amendment to Reduce Class Size, 816 So.2d 580, 583 (Fla.2002). In other words, the proposed amendment does not combine unrelated provisions, some of which are popular and others that may be disfavored.
2. Altering or Performing the Functions of Multiple Branches of Government
The proposed amendment impacts the executive and legislative branches, but it does not substantially alter or perform their functions. This proposed amendment impacts these branches because it mandates two things: (a) the development and implementation of a State program; and (b) the expenditure of State funds.to fund the program. However, these requirements are not substantial enough to be disqualifying. Both requirements will be discussed individually.
a. Program Development
The proposed amendment impacts the legislative branch because it mandates that the Legislature create and evaluate a comprehensive statewide tobacco education and prevention program. However, these requirements clearly are not disqualifying. This Court has found that proposed amendments delineating components for a program were permissible where “the branches of government [were] left with wide discretion in determining the details of the project.” Reduce Class Size, 816 So.2d at 584 (quoting High Speed Monorail, 769 So.2d at 371). Here, the proposed amendment sets forth a framework for the program but leaves the details for implementing and administering the program to the Legislature. Requiring the Legislature to create and evaluate such a program does not usurp the legislative lawmaking function.
The executive branch also is impacted because the amendment requires the enforcement of laws, regulations and policies against the purchase and possession of tobacco by minors. However, the executive branch already complies with this component of the proposal. Even if it did not, the fact that this branch of government is required to comply with a provision of the Florida Constitution does not necessarily constitute the usurpation of the branch’s function within the meaning of the single-subject rule. See, e.g., Advisory Op. to Att’y. Gen. re Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d 491, 497-98 (Fla.2002) (finding amendment left executive branch prime function intact where it had no effect on the power of prosecutors to charge persons with crime when appropriate). The executive branch’s prime function is the enforcement of the laws. All this component of the amendment requires is the enforcement of these laws.
Accordingly, the proposed amendment does not substantially alter or perform the function of the legislative or executive branch.
b. Program Funding
The proposal designates a percentage of funds from the Tobacco Settlement[2] resulting in a specific dollar amount per year for appropriations to the program. A funding provision for an amendment may not substantially interfere with either the legislative appropriations function or the executive veto power. Advisory Op. to Att’y Gen. re Requirement for Adequate Pub. Educ. Funding, 703 So.2d 446, 450 *1193 (Fla.1997). This unique funding provision does not substantially interfere with the functions of either branch.
The amendment’s funding provision is distinguishable from the one in Adequate Public Education Funding, 703 So.2d 446. In that decision, this Court struck down a proposed constitutional amendment requiring the State to expend forty percent of its entire appropriations under article III of the Florida Constitution, not including lottery proceeds or federal funds, for public education funding. The Court reasoned that “[t]he educational funding amendment violated the single-subject principle because its rigid funding percentage actually performed the appropriation function of the Legislature and removed entirely the Governor’s ability to veto any portion of that appropriation.” High Speed Monorail, 769 So.2d at 370 (discussing this Court’s reasoning in Adequate Public Education Funding, 703 So.2d 446). This massive restriction on appropriations also limited the entirety of the State’s other functions to the remaining sixty percent of the budget, rendering many other government functions impossible to fund.
Our decisions in two other cases support our analysis of this current proposal. In High Speed Monorail, this Court found no violation of the single-subject rule where the proposed amendment did not require the Legislature to spend a specific percentage of the budget or even a specific amount, nor point to a specific tax or fee from which the revenues for the project would come. 769 So.2d at 370. Moreover, in Advisory Opinion to the Attorney General re Fee on Everglades Sugar Production, 681 So.2d 1124 (Fla.1996), where an initiative created new funding for a program rather than relying on the appropriations budget of the Legislature, the Court also found no violation of the single-subject rule.
Guided by this precedent, we find that the funding provision here is not imper-missibly rigid and restrictive to the legislative and executive branches. As to the legislative branch, the proposal funds the program by requiring the Legislature to set aside yearly the fifteen percent of the year 2005 annual Tobacco Settlement payment to the State, adjusted annually for inflation. It does not require that the Legislature appropriate a specified percentage of its budget to fund the program. More importantly, the proposal designates these funds for a use mandated by the settlement agreement itself.
As to the executive branch, this Court has held that an amendment may mandate the expenditure of state funds without improperly usurping the Governor’s veto power. See High Speed Monorail, 769 So.2d at 371 (finding that amendment placing some restrictions or limits on veto power regarding budget for money to implement the amendment was not a prohibited cataclysmic change nor did it substantially alter the Governor’s powers).
In essence, the proposed amendment has one chief purpose, which is to use a portion of the Tobacco Settlement money to create a tobacco education and prevention program especially directed toward youth. The mechanism for achieving this purpose does not substantially alter or perform the functions of either the legislative or executive branch. Therefore, the proposed amendment complies with the single-subject rule.
IY. REVIEW OF THE BALLOT TITLE AND SUMMARY
A. Applicable Law
Section 101.161(1), Florida Statutes (2005), specifies both substantive and technical requirements for the ballot title and summary. Substantively, the bal *1194 lot title and summary must provide a clear and unambiguous explanation of the chief purpose of the measure. Id. Technically, the ballot title must consist of a caption not exceeding fifteen words in length and the ballot summary may not exceed seventy-five words in length. Id. These requirements provide “voters with fair notice of the contents of the proposed initiative so that the voter will not be misled as to its purpose and can cast an intelligent and informed ballot.” Advisory Op. to Att’y Gen. re People’s Prop. Rights Amendments Providing Comp. for Restricting Real Prop. Use May Cover Multiple Subjects, 699 So.2d 1304, 1307 (Fla.1997). “Simply put, the ballot must give the voter fair notice of the decision he must make.” Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982). The title and summary must be accurate and informative, but they “need not explain every detail or ramification of the proposed amendment.” Advisory Op. to Att’y Gen. re Prohibiting Pub. Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997).
B. Application of Law
First, when read together, the ballot title and summary are accurate and informative. They provide fair notice of the content of the proposed amendment so that the voter will not be misled and can cast an intelligent and informed ballot. The title of the initiative in this case is “Protect People, Especially Youth, From Addiction, Disease, and Other Health Hazards of Using Tobacco.” The ballot summary clearly and unambiguously sets forth the initiative’s primary purpose and source of funding. The ballot summary need not, and does not, reflect every component of the program. Instead, it sets out a comprehensive statewide tobacco education and prevention program, which follows the Centers for Disease Control best practices and includes advertising. The summary also states the funding for the program shall come annually from the Tobacco Settlement money in the amount of fifteen percent of the year 2005 payments, adjusted annually for inflation. Thus, the ballot title and summary of the proposed amendment are clear and unambiguous. They adequately inform the voters of the chief purpose of the proposed amendment.
Second, the title and summary comply with the statute’s technical requirements. The ballot title does not exceed fifteen words and the ballot summary does not exceed seventy-five words in accordance with section 101.161(1).
Therefore, the ballot title and summary comply with section 101.161(1) of the Florida Statutes.
Y. REVIEW OF THE FINANCIAL IMPACT STATEMENT
A. Applicable Law
Article XI, section 5(c), Florida Constitution, mandates that “[t]he legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3.” Section 100.371(6), Florida Statutes (2005), sets out the procedure for placement of these financial impact statements related to ballot initiatives on the ballot. Section 100.371(6)(a) requires that the statement address the estimated increase or decrease in any revenues or costs to the state or local governments resulting from the proposed initiative. Section 100.371(6)(b)(3) requires that the statement be clear and unambiguous, consist of no more than seventy-five words, and permits the statement to set forth a range of potential impacts.
*1195 B. Application of Law
The financial impact statement complies with section 100.371(6), Florida Statutes (2005). The statement clearly conveys the financial impact as required by section 100.371(6)(a). The statement first addresses the direct impact of the proposed initiative — $57 million in 2005 to be increased annually with inflation. It next discusses indirect impact including long-term savings to State and local government health and insurance programs and minor revenue loss to State government, presumably through loss of tax revenue in light of decreased sales of tobacco products. Although the indirect financial impacts are described as indeterminate, rather than quantified, this Court has previously found no basis to reject similar wording. For example, in Advisory Opinion to the Attorney General re Authorizes Miami-Dade & Broward County Voters to Approve Slot Machines in Parimutuel Facilities, 882 So.2d 966, 967 (Fla.2004), this Court found that a financial impact statement stating that “governmental costs associated with [an initiative] will increase by an unknown amount” may be placed on the ballot. Not only did the statement decline to estimate the governmental costs, it also did not designate to what government, state or local, the costs would adhere. Here, although the statement states that both the long-term savings and revenue loss are indeterminate, each is ascribed to a particular government. Finally, the statement meets the requirements that it be clear and unambiguous and consist of no more than seventy-five words. § 100.371(6)(b)(3), Fla. Stat.
Accordingly, there is no basis for rejecting the financial impact statement under section 100.371(6).
VI. CONCLUSION
For the reasons stated, we hold that the initiative petition and proposed title and summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2005), and that the financial impact statement is in accordance with section 100.371(6), Florida Statutes (2005). Accordingly, we approve the amendment and financial impact statement for placement on the ballot. We note, however, that no other issue is addressed herein and this opinion should not be construed as expressing either favor for or opposition to the proposed amendment. No motion for rehearing will be permitted.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. No briefs were filed in opposition to this ballot initiative.

. The Tobacco Settlement, found at http:// stic.neu. edu/Fl/flsettle. htm, awards the State of Florida five and one-half percent of $8 Billion in the year 2005, and per annum indefinitely.