# Supreme Court of Florida

_____

No. SC15-1796
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE USE OF MARIJUANA FOR DEBILITATING MEDICAL CONDITIONS.**

_____

No. SC15-2002
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE USE OF MARIJUANA FOR DEBILITATING MEDICAL CONDITIONS (FINANCIAL IMPACT STATEMENT).**

[December 17, 2015]

PER CURIAM.

The Attorney General of Florida has requested this Court's opinion as to the validity of an initiative petition submitted by an organization called People United for Medical Marijuana circulated pursuant to article XI, section 3, of the Florida Constitution, and the corresponding Financial Impact Statement. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons that follow, we conclude that the proposed amendment embraces a single subject and therefore complies with article XI, section 3. We also conclude that the ballot title

and summary comply with section 101.161(1), Florida Statutes (2015). Finally, we conclude that the accompanying Financial Impact Statement is in compliance with section 100.371(5), Florida Statutes (2015). We therefore approve the proposed amendment and Financial Impact Statement for placement on the ballot.

**BACKGROUND**

On October 20, 2015, the Attorney General of Florida petitioned this Court for an opinion as to the validity of an initiative petition sponsored by People United for Medical Marijuana and circulated pursuant to article XI, section 3 of the Florida Constitution. The sponsor submitted a brief supporting the validity of the initiative petition.

The proposed amendment would create a new section 29 to article X of the Florida Constitution, and states:

> ARTICLE X, SECTION 29. Medical marijuana production, possession and use. —
> (a) PUBLIC POLICY.
>     (1) The medical use of marijuana by a qualifying patient or caregiver in compliance with this section is not subject to criminal or civil liability or sanctions under Florida law.
>     (2) A physician shall not be subject to criminal or civil liability or sanctions under Florida law solely for issuing a physician certification with reasonable care to a person diagnosed with a debilitating medical condition in compliance with this section.
>     (3) Actions and conduct by a Medical Marijuana Treatment Center registered with the Department, or its agents or employees, and in compliance with this section and Department regulations, shall not be subject to criminal or civil liability or sanctions under Florida law.

(b)  DEFINITIONS.  For purposes of this section, the following words and terms shall have the following meanings:

(1)  "Debilitating Medical Condition" means cancer, epilepsy, glaucoma, positive status for human immunodeficiency virus (HIV), acquired immune deficiency syndrome (AIDS), post-traumatic stress disorder (PTSD), amyotrophic lateral sclerosis (ALS), Crohn's disease, Parkinson's disease, multiple sclerosis, or other debilitating conditions of the same kind or class as or comparable to those enumerated, and for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.

(2)  "Department" means the Department of Health or its successor agency.

(3)  "Identification card" means a document issued by the Department that identifies a qualifying patient or a caregiver.

(4)  "Marijuana" has the meaning given cannabis in Section 893.02(3), Florida Statutes (2014), and, in addition, "Low-THC cannabis" as defined in Section 381.986(1)(b), Florida Statutes (2014), shall also be included in the meaning of the term "marijuana."

(5)  "Medical Marijuana Treatment Center" (MMTC) means an entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, or administers marijuana, products containing marijuana, related supplies, or educational materials to qualifying patients or their caregivers and is registered by the Department.

(6)  "Medical use" means the acquisition, possession, use, delivery, transfer, or administration of an amount of marijuana not in conflict with Department rules, or of related supplies by a qualifying patient or caregiver for use by the caregiver's qualifying patient for the treatment of a debilitating medical condition.

(7)  "Caregiver" means a person who is at least twenty-one (21) years old who has agreed to assist with a qualifying patient's medical use of marijuana and has qualified for and obtained a caregiver identification card issued by the Department.  The Department may limit the number of qualifying patients a caregiver may assist at one time and the number of caregivers that a qualifying patient may have at one time.  Caregivers are prohibited from consuming marijuana obtained for medical use by the qualifying patient.

(8)  "Physician" means a person who is licensed to practice medicine in Florida.

(9)  "Physician certification" means a written document signed by a physician, stating that in the physician's professional opinion, the patient suffers from a debilitating medical condition, that the medical use of marijuana would likely outweigh the potential health risks for the patient, and for how long the physician recommends the medical use of marijuana for the patient.  A physician certification may only be provided after the physician has conducted a physical examination and a full assessment of the medical history of the patient.  In order for a physician certification to be issued to a minor, a parent or legal guardian of the minor must consent in writing.

(10)  "Qualifying patient" means a person who has been diagnosed to have a debilitating medical condition, who has a physician certification and a valid qualifying patient identification card.  If the Department does not begin issuing identification cards within nine (9) months after the effective date of this section, then a valid physician certification will serve as a patient identification card in order to allow a person to become a "qualifying patient" until the Department begins issuing identification cards.

(c)  LIMITATIONS.

(1)  Nothing in this section allows for a violation of any law other than for conduct in compliance with the provisions of this section.

(2)  Nothing in this section shall affect or repeal laws relating to non-medical use, possession, production, or sale or marijuana.

(3)  Nothing in this section authorizes the use of medical marijuana by anyone other than a qualifying patient.

(4)  Nothing in this section shall permit the operation of any vehicle, aircraft, train or boat while under the influence of marijuana.

(5)  Nothing in this section requires the violation of federal law or purports to give immunity under federal law.

(6)  Nothing in this section shall require any accommodation of any on-site medical use of marijuana in any correctional institution or detention facility or place of education or employment, or of smoking medical marijuana in any public place.

(7)  Nothing in this section shall require any health insurance provider or any government agency or authority to reimburse any person for expenses related to the medical use of marijuana.

(8)  Nothing in this section shall affect or repeal laws relating to negligence or professional malpractice on the part of a qualified patient, caregiver, physician, MMTC, or its agents or employees.

(d)  DUTIES OF THE DEPARTMENT.  The Department shall issue reasonable regulations necessary for the implementation and enforcement of this section.  The purpose of the regulations is to ensure the availability and safe use of medical marijuana by qualifying patients.  It is the duty of the Department to promulgate regulations in a timely fashion.

(1)  Implementing Regulations.  In order to allow the Department sufficient time after passage of this section, the following regulations shall be promulgated no later than six (6) months after the effective date of this section:

a.  Procedures for the issuance and annual renewal of qualifying patient identification cards to people with physician certifications and standards for renewal of such identification cards.  Before issuing an identification card to a minor, the Department must receive written consent from the minor's parent or legal guardian, in addition to the physician certification.

b.  Procedures establishing qualifications and standards for caregivers, including conducting appropriate background checks, and procedures for the issuance and annual renewal of caregiver identification cards.

c.  Procedures for the registration of MMTCs that include procedures for the issuance, renewal, suspension and revocation of registration, and standards to ensure proper security, record keeping, testing, labeling, inspection, and safety.

d.  A regulation that defines the amount of marijuana that could reasonably be presumed to be an adequate supply for qualifying patients' medical use, based on the best available evidence.  This presumption as to quantity may be overcome with evidence of a particular qualifying patient's appropriate medical use.

(2)  Identification cards and registrations. The Department shall begin issuing qualifying patient and caregiver identification cards, and registering MMTCs no later than nine (9) months after the effective date of this section.

(3)  If the Department does not issue regulations, or if the Department does not begin issuing identification cards and registering MMTCs within the time limits set in this section, any Florida citizen

shall have standing to seek judicial relief to compel compliance with the Department's constitutional duties.

(4) The Department shall protect the confidentiality of all qualifying patients. All records containing the identity of qualifying patients shall be confidential and kept from public disclosure other than for valid medical or law enforcement purposes.

(e) LEGISLATION. Nothing in this section shall limit the legislature from enacting laws consistent with this section.

(f) SEVERABILITY. The provisions of this section are severable and if any clause, sentence, paragraph or section of this measure, or an application thereof, is adjudged invalid by a court of competent jurisdiction other provisions shall continue to be in effect to the fullest extent possible.

The ballot title for the amendment is: "Use of Marijuana for Debilitating Medical Conditions." The ballot summary states:

> Allows medical use of marijuana for individuals with debilitating medical conditions as determined by a licensed Florida physician. Allows caregivers to assist patients' medical use of marijuana. The Department of Health shall register and regulate centers that produce and distribute marijuana for medical purposes and shall issue identification cards to patients and caregivers. Applies only to Florida law. Does not immunize violations of federal law or any non-medical use, possession or production of marijuana.

On October 21, 2015, the Financial Impact Estimating Conference forwarded to the Attorney General the following financial impact statement regarding the initiative petition:

> Increased costs from this amendment to state and local governments cannot be determined. There will be additional regulatory costs and enforcement activities associated with the production, sale, use and possession of medical marijuana. Fees may offset some of the regulatory costs. Sales tax will likely apply to most purchases, resulting in a substantial increase in state and local government

revenues that cannot be determined precisely. The impact on property tax revenues cannot be determined.

No briefs or comments were submitted to this Court in support of or in opposition to the financial impact statement.

**STANDARD OF REVIEW**

This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and "has been reluctant to interfere" with "the right of self-determination for <u>all</u> Florida's citizens" to formulate "their own organic law." <u>Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses</u>, 818 So. 2d 491, 494 (Fla. 2002).

<u>In re Advisory Opinion to Atty. Gen. re Use of Marijuana for Certain Med. Conditions</u>, 132 So. 3d 786, 794 (Fla. 2014). As such, we have explained that we are obliged to uphold a proposed amendment unless it is "clearly and conclusively defective." <u>In re Advisory Op. to Att'y Gen. re Florida's Amend. to Reduce Class Size</u>, 816 So. 2d 580, 582 (Fla. 2002).

When this Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court limits its inquiry to two issues: (1) whether the amendment itself satisfies the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary satisfy the clarity requirements of section 101.161, Florida Statutes.

<u>Advisory Op. to Att'y Gen. re Water & Land Conservation—Dedicates Funds to Acquire & Restore Fla. Conservation & Recreation Lands</u>, 123 So. 3d 47, 50 (Fla. 2013).

## SINGLE-SUBJECT REQUIREMENT

Article XI, section 3, of the Florida Constitution provides that any proposed citizen initiative amendment "shall embrace but one subject and matter directly connected therewith." Art. XI, § 3, Fla. Const. "In evaluating whether a proposed amendment violates the single-subject requirement, the Court must determine whether it has a 'logical and natural oneness of purpose.'" Advisory Op. to Att'y Gen. re Amend. to Bar Gov't from Treating People Differently Based on Race in Pub. Educ., 778 So. 2d 888, 891-92 (Fla. 2000) (quoting Fine v. Firestone, 448 So. 2d 984, 990 (Fla. 1984)).

This single-subject rule prevents a proposal "from engaging in either of two practices: (a) logrolling; or (b) substantially altering or performing the functions of multiple branches of state government." Advisory Op. to Att'y Gen. re Water & Conservation, 123 So. 3d at 50. This Court has defined logrolling as "a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue." In re Advisory Op. to Att'y Gen. re Save Our Everglades, 636 So. 2d 1336, 1339 (Fla. 1994). And, this Court has explained that "[a] proposal that affects several branches of government will not automatically fail; rather it is when a proposal substantially alters or performs the functions of multiple branches that it violates

the single-subject test." <u>Advisory Op. to Att'y Gen. re Fish and Wildlife Conservation Comm'n</u>, 705 So. 2d 1351, 1353-54 (Fla. 1998).

We conclude that the initiative has a logical and natural oneness of purpose, specifically, whether Floridians wish to include a provision in our state constitution permitting the medical use of marijuana. The proposed amendment's provision regarding the specific role for the Department of Health in overseeing and licensing the medical use of marijuana is directly connected with this purpose. <u>See Advisory Op. to Att'y Gen. re Fee on Everglades Sugar Prod.</u>, 681 So. 2d 1124, 1128 (Fla. 1996) (concluding that the proposal did not violate the single-subject rule and explaining that "the imposition of the fee and the designation of the revenue . . . are two components directly connected to the fundamental policy of requiring first processors to contribute towards ongoing Everglades restoration"). Further, the proposed amendment's provision removing state-imposed penalties and liability from those involved in the authorized use of medical marijuana is also directly connected with the amendment's purpose. Therefore, the proposed amendment does not engage in impermissible logrolling. <u>See Advisory Op. to Att'y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys.</u>, 769 So. 2d 367, 369 (Fla. 2000) (holding that "there is no impermissible logrolling" where "[t]he only subject embraced in the proposed amendment is whether the people of this State want to include a

provision in their Constitution mandating that the government build a high speed ground transportation system").

Additionally, the proposed amendment does not substantially alter or perform the functions of multiple branches. If the proposed amendment passes, the Department of Health would perform regulatory oversight, which would not substantially alter its function or have a substantial impact on legislative functions or powers. The proposed amendment would require the Department of Health (or its successor agency) to register and oversee providers, issue identification cards, and determine treatment amounts. See Advisory Op. to Att'y Gen.—Fee on Everglades Sugar Prod., 681 So. 2d at 1128 ("[T]he Fee amendment does not substantially affect or alter any government function, but is a levy by an existing agency."); see also Advisory Op. to Att'y Gen. re Term Limits Pledge, 718 So. 2d 798, 802 (Fla. 1998) (finding that the initiative did not substantially alter the functions of multiple branches "even though affecting the constitutional authority of the Secretary of State and affecting more than one provision of the constitution"). "[T]he fact that [a] branch of government is required to comply with a provision of the Florida Constitution does not necessarily constitute the usurpation of the branch's function within the meaning of the single subject rule." Advisory Op. to Att'y Gen. re Protect People, Especially Youth, From Addiction, Disease, & Other Health Hazards of Using Tobacco, 926 So. 2d 1186, 1192 (Fla.

2006).  Moreover, the Department of Health would not be empowered under this proposed amendment to make the types of primary policy decisions that are prohibited under the doctrine of non-delegation of legislative power.  See Askew v. Cross Key Waterways, 372 So. 2d 913 (Fla. 1978).

Accordingly, we conclude that the amendment complies with the single-subject requirement of article XI, section 3.

## BALLOT TITLE AND SUMMARY

We next address whether the proposed amendment will be "accurately represented on the ballot."  Armstrong v. Harris, 773 So. 2d 7, 12 (Fla. 2000) (emphasis omitted).  We conclude that the ballot title and summary meet the statutory requirements and accurately represent the proposed amendment on the ballot.

Section 101.161(1), Florida Statutes (2015) provides the following clarity requirements for the ballot title and summary:

> The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . .  The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

The purpose of these requirements is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can

- 11 -

cast an intelligent and informed ballot." Advisory Op. to Att'y Gen. re Term

Limits Pledge, 718 So. 2d 798, 803 (Fla. 1998).

> This Court's review of the validity of a ballot title and summary under

section 101.161(1) involves two inquiries:

> First, the Court asks whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment." Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So. 2d [491, 497 (Fla. 2002)]. Second, the Court asks "whether the language of the title and summary, as written, misleads the public." Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers, 705 So. 2d 563, 566 (Fla. 1998).

Advisory Op. to Att'y Gen. re Fairness Initiative Requiring Leg. Determination

That Sales Tax Exemptions & Exclusions Serve a Public Purpose, 880 So. 2d 630,

635-36 (Fla. 2004).

> We conclude that the ballot title and summary comply with the statutory

word limitations. Additionally, the ballot title and summary fairly inform voters of

the purpose of the proposed amendment—the state authorization of medical

marijuana for patients with debilitating medical conditions. The language is clear

and does not mislead voters regarding the actual content of the proposed

amendment. Accordingly, we conclude that the ballot title and summary comply

with the clarity requirements of section 101.161.

# FINANCIAL IMPACT STATEMENTS

We have an independent obligation to review the financial impact statement to ensure that it is clear and unambiguous and in compliance with Florida law. See Adv. Op. to Atty Gen. re Use of Marijuana for Certain Medical Conditions, 132 So. 3d at 809 (citing Adv. Op. to Atty Gen. re Referenda Required for Adoption & Amend. of Local Gov't Comprehensive Land Use Plans, 963 So. 2d 210, 214 (Fla. 2007)). Article XI, section 5(c), of the Florida Constitution provides, "The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3." Additionally, section 100.371(5)(a), Florida Statutes (2015), provides that the financial impact statement must address "the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative." Section 100.371(5)(c)2, Florida Statutes (2015), requires the financial impact statement to be "clear and unambiguous" and "no more than 75 words in length."

We have explained that our "review of financial impact statements is narrow." Adv. Op. to Att'y Gen. re Water & Land Conservation, 123 So. 3d at 52. We address only "whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or

decrease in any revenues or costs to the state or local governments." Advisory Op. to Att'y Gen. re Local Gov't Comprehensive Land Use Plans, 963 So. 2d at 214.

We determine that the financial impact statement complies with the word limit and meets the other statutory requirements. It clearly and unambiguously states that there are likely increased costs associated with the additional regulatory and enforcement activities that the proposal would require, but that the amount could not be determined and fees may offset a portion of the increased costs. Additionally, the financial impact statement clearly and unambiguously explains that the Financial Estimating Conference could not determine the change in revenue. Accordingly, we hold that the financial impact statement complies with section 100.371(5), Florida Statutes (2015). See Advisory Op. to Att'y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens the Right to Decide Local Growth Mgmt. Plan Changes, 2 So. 3d 118, 124 (Fla. 2008) ("Overall, the financial impact statement is necessarily indefinite but not unclear or ambiguous.").

## CONCLUSION

Based on the foregoing, we conclude that the initiative petition and ballot title and summary satisfy the legal requirements of article XI, section 3, of the Florida Constitution, and section 101.161(1), Florida Statutes. In addition, the Financial Impact Statement is in compliance with section 100.371(5), Florida

- 14 -

Statutes.  We therefore approve the proposed amendment and Financial Impact

Statement for placement on the ballot.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Two Cases:

Original Proceeding – Advisory Opinion – Attorney General

Pamela Jo Bondi, Attorney General, and Ellen B. Gwynn, Senior Assistant Attorney General, Tallahassee, Florida,

for Petitioner

Jon L. Mills of Boies Schiller & Flexner, LLP, Miami, Florida; Timothy Edd McLendon, Gainesville, Florida; and Andrew Mifflin Starling, Orlando, Florida,

for People United for Medical Marijuana, Sponsor