# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-4994

_____

THE FLORIDA HOUSE OF
REPRESENTATIVES,

    Appellant,

    v.

FLORIGROWN, LLC, VOICE OF
FREEDOM, INC., FLORIDA
DEPARTMENT OF HEALTH, etc., et
al.,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

September 13, 2019

B.L. THOMAS, J.

The Florida House of Representatives challenges the trial court's order denying its motion to intervene in an action asserting that portions of section 381.986, Florida Statutes, violate article X, section 29 of the Florida Constitution. Because the House has a cognizable interest in the outcome of the declaratory action, we reverse. But we note that because this court recently denied rehearing en banc by a 4-4 vote in *Fla. Dep't of Health v. Florigrown, LLC*, No. 1D18-4471, 2019 WL 2943329 (Fla. 1st DCA July 9, 2019), *rehearing en banc denied,* No. 1D18-4471, 2019 WL 4019919 (Mem) (Fla. 1st DCA August 27, 2019), rejecting the

motion filed by the Governor and the Florida Department of Health, the Florida House of Representatives will not be permitted to challenge the temporary injunction entered in this case: "Intervention is a dependent remedy in the sense that an intervenor may not inject a new issue into the case." *Envtl. Confederation of Sw. Fla., Inc. v. IMC Phosphates, Inc.*, 857 So. 2d 207, 211 (Fla. 1st DCA 2002) (citation omitted), absent further review by the supreme court on the order below granting the temporary injunction.

*Facts*

Article X, section 29 of the Florida Constitution provides that the use of medical marijuana by a qualifying patient or caregiver is not subject to criminal or civil liability. This section assigns to the Florida Department of Health the responsibility of issuing "reasonable regulations necessary for the implementation and enforcement of this section," stating that "[i]t is the duty of the Department to promulgate regulations in a timely fashion." Art. X, § 29(d), Fla. Const. That section requires the Department to promulgate procedures for issuing patient identification cards, qualifications for caregivers, and the registration of "Medical Marijuana Treatment Centers." Art. X, § 29(d)(1)a-d, Fla. Const. The section defines a Medical Marijuana Treatment Center as an "entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, or administers" marijuana or marijuana products to qualified patients or caregivers. Art. X, § 29(b)(5), Fla. Const. This section also provides that "[n]othing in this section shall limit the legislature from enacting laws consistent with this section." Art. X, § 29(e), Fla. Const.

In 2017,[1] the legislature amended section 381.986, Florida Statutes, requiring that "[a] licensed medical marijuana treatment center shall cultivate, process, transport, and dispense marijuana for medical use." § 381.986(8)(e), Fla. Stat. (2017). Section 381.986 also requires the Department to license a specified amount of

---

[1] Ch. 2017-232, Laws of Fla.

Medical Marijuana Treatment Centers and describes the parameters for this licensing. § 381.986(8)(a)(2), Fla. Stat. (2017).

In December 2017, a group of plaintiffs including Appellee Florigrown, LLC, an entity that was denied licensure as a Medical Marijuana Treatment Center, filed a complaint against the Department's Office of Medical Marijuana Use and the director of that office, the State Surgeon General and Secretary of the Department of Health, the Governor, and the State of Florida.[2] The complaint sought injunctive relief, compelling the defendants to comply with article X, section 29 of the Florida Constitution, and sought declaratory relief to determine whether the new provisions of section 381.986, Florida Statutes, were constitutional.

The complaint alleged that the new legislative parameters for the licensing of treatment centers created "multiple classes of applicants entitled to special privileges" in the process of receiving one of the treatment-center licenses. The complaint alleged that the new provisions of section 318.986, Florida Statues, imposed limitations on the amount of Medical Marijuana Treatment Centers that the Department could register, in violation of article X, section 29 of the Florida Constitution. The complaint also alleged that new provisions in section 381.986, Florida Statutes, constituted an impermissible special law.

The Appellees moved for a temporary injunction, requesting that the defendants be enjoined from registering Medical Marijuana Treatment Centers under section 381.986, Florida Statutes, and requiring them to register the treatment centers pursuant to article X, section 29 of the Florida Constitution. After an evidentiary hearing, the trial court denied Appellees' motion without prejudice, finding that while Florigrown had shown a substantial likelihood of success on the merits of its claims that the Department was not adhering to the Florida Constitution, it could not show irreparable harm, as it could apply for a remaining treatment-center license. Approximately two months later, the court granted Appellees' motion for temporary injunction. The injunction required the Department to cease registering Medical

_____

[2] The court ultimately granted motions to dismiss the Governor and the State.

3

Marijuana Treatment Centers under section 381.986, Florida Statutes, to begin registering centers in accordance with the plain language of article X, section 29 of the Florida Constitution, and to register Florigrown as a Medical Marijuana Treatment Center.

This Court affirmed the portion of the injunction requiring the Department to consider Florigrown's request for licensure without applying the portions of section 381.986 that conflict with the constitution but quashed the portions of the injunction requiring the Department to immediately register Florigrown. *Fla. Dep't of Health v. Florigrown, LLC*, No. 1D18-4471, 2019 WL 2943329 (Fla. 1st DCA July 9, 2019), *rehearing en banc denied* (August 27, 2019).

The House filed a motion to intervene as an additional defendant,[3] arguing that article X, section 29 of the Florida Constitution gave implementing authority to the Department, but reserved policymaking authority to the Legislature. The House stated that it sought to intervene "to defend the Legislature's prudent effort at striking the necessary, delicate balance between implementation of" article, X, section 29 of the Florida Constitution and "conflicting federal drug policy."

The trial court denied the House's motion to intervene. The court ruled that because any policy enacted by the legislature must be constitutional, and thus must comport with article X, section 29 of the Florida Constitution, the House could not lose any policymaking authority as a result of the declaratory action.

*Analysis*

This Court reviews the denial of a motion to intervene for an abuse of discretion. *Litvak v. Scylla Properties, LLC*, 946 So. 2d 1165, 1172 (Fla. 1st DCA 2006). Florida Rule of Civil Procedure 1.230, which governs interventions, "may be utilized by the omitted party if the plaintiff has left out a *necessary or proper party*." Fla. R. Civ. P. 1.230, Author's Comment—1967 (emphasis added). The House does not dispute that the Department is the

---

[3] Twenty-two Florida businesses who either were denied licensure as a Medical Marijuana Treatment Center or claimed that their applications were "not being processed," and who argued that they were similarly situated to Appellee Florigrown, were permitted to intervene as plaintiffs.

4

only necessary party to the underlying declaratory action. Thus, to be permitted to intervene, the House must be a proper party to the action.

"The proper defendant in a lawsuit challenging a statute's constitutionality is the state official designated to enforce the statute." *Atwater v. City of Weston*, 64 So. 3d 701, 703 (Fla. 1st DCA 2011); *Haridolopolos v. Alachua Cty.*, 65 So. 3d 577, 578 (Fla. 1st DCA 2011) ("A suit challenging the constitutionality of a statute must be brought against the state agency or department charged with enforcing the statute at issue").

If a government official or entity is not the enforcing authority of a challenged statute, courts must consider two additional factors in determining whether that official or entity is a proper party: (1) "whether the action involves a broad constitutional duty of the state implicating specific responsibilities of the" official or entity, and (2) whether official or entity "has an actual, cognizable interest in the challenged action." *Scott v. Francati*, 214 So. 3d 742, 747 (Fla. 1st DCA 2017); *Marcus v. State Senate for the State*, 115 So. 3d 448, 448 (Fla. 1st DCA 2013) (holding the Florida Senate and House of Representatives were not proper defendants in an action for declaratory judgment where "[n]either legislative body has been designated as the enforcing authority" of the challenged statute and the action did not "involve a duty or responsibility of the State implicating specific responsibilities of" either legislative body); *see also Nat'l Wildlife Fed'n, Inc. v. Glisson*, 531 So. 2d 996, 997 (Fla. 1st DCA 1988) ("'Anyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention . . .'" (quoting Fla. R. Civ. P. 1.230)).

The House argues that although it is not the entity tasked with enforcing the challenged statute, article X, section 29 of the Florida Constitution also states that nothing therein "shall limit the legislature from enacting laws consistent with" that section. Thus, the House asserts it has an interest in preserving this authority such that it should be permitted to intervene.

Article III, section 1 of Florida Constitution vests the legislative power of the State to the legislature. "In matters of state policy and law making, the Legislature has plenary powers, limited only by the Constitutions of the state of Florida and of the

5

United States." *Charlotte Harbor & N. Ry. Co. v. Welles*, 78 Fla. 227, 234 (Fla. 1919). "The Legislature has a great deal of discretion in determining what measures are necessary for the public's protection," and this discretion extends to the regulation of marijuana. *Hamilton v. State*, 366 So. 2d 8, 10 (Fla. 1978). Article X, section 29 expressly reserves to the legislature the authority to enact laws consistent with that section. The 2017 revisions to section 381.396, Florida Statutes, represent the legislature's attempt to exercise its discretion within the new bounds created by the constitution. The declaratory action into which the House seeks to intervene will determine whether the legislature acted permissibly within these new constitutional limitations. The House has an actual cognizable interest in such an action, which will define the scope of its constitutional authority to police certain narcotics.

This interest is particularly vital considering that the conduct authorized by article X, section 29 of the Florida Constitution is prohibited by federal law. The federal government has categorized marijuana as a Schedule I drug, meaning it has a *high potential for abuse*, there is *no currently accepted medical use of the drug* in treatment in the United States, and there is a *lack of accepted safety* for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1)A-C, Schedule I(c)(10) (emphasis added). In addition, some studies have indicated that habitual use of cannabis may cause violent and criminal behavior as a result of changes in brain function:

> However, 20% of the boys who started using pot by age 18 continued to use it through middle age (32-48 years). One fifth of those who were pot smokers (22%) reported violent behavior that began after beginning to use cannabis, whereas only 0.3% reported violence before using weed. Continued use of cannabis over the lifetime of the study was the strongest predictor of violent convictions, even when the other factors that contribute to violent behavior were considered in the statistical analysis.

> In conclusion, the results show that continued cannabis use *is associated with a 7-fold greater odds for*

6

*subsequent commission of violent crimes.* The level of risk is equivalent to the increased risk of lung cancer from smoking cigarettes over a similar duration (40 years).

R. Douglas Fields, Ph.D, *Marijuana Use May Increase Violent Behavior*, PSYCHOLOGY TODAY (March 20, 2016), https://www.psychologytoday.com/us/blog/the-new brain/201603/marijuana-use-may-increase-violent-behavior (emphasis added). Additionally, a 2016 study, conducted by researchers from King's College of London and University of South Florida, concluded that cannabis use can predict the commission of subsequent violent offending, suggesting a possible causal effect. *See* Tabea Schoeler, MSc, et al., *Continuity of Cannabis Use and Violent Offending Over the Life Course*, 46 Psychological Medicine1663 (2016). Further, the United States Surgeon General published an advisory on August 29, 2019, warning that, because marijuana binds receptors in the brain that are critical for development, marijuana presents a high risk to adolescents; the Surgeon general stated that "[n]o amount of marijuana use during pregnancy or adolescence is known to be safe." Surgeon General VADM Jerome Adams, *U.S. Surgeon General's Advisory: Marijuana Use and the Developing Brian*, https://www.hhs.gov/surgeongeneral/reports-and-publications/addiction-and-substance-misuse/advisory-on-marijuana-use-and-developing-brain/index.html (last visited August 29, 2019).

The legislature has the authority and responsibility to protect the public from harm by regulating the availability of a controlled substance that the federal government has determined is not safe for medical use, is susceptible to abuse, and presents a harm to the public. The underlying declaratory action challenges the manner in which the legislature has attempted to exercise its broad constitutional authority to enact policies to protect the public. Thus, the legislature has a clear and actual cognizable interest in defending this challenge.

In its order denying the House's motion to intervene, the trial court acknowledged a legislative interest in the underlying action discrete from the executive's authority, stating that "[t]he Legislature has absolutely no authority to either intrude on or

attempt to marginalize the responsibilities of the executive branch that are specifically enumerated in [article X, section 29 of the Florida Constitution]." By positioning the executive and legislative branches against one another, the trial court should have recognized that the legislature had a cognizable interest in the action distinct from the executive.

Article X, section 29 of the Florida Constitution institutes a dramatic sea change in the regulation of marijuana in Florida. The new provisions of section 381.986 demonstrate the legislature's attempt to navigate these changes. The trial court abused its discretion in denying the House's motion to intervene.

We reverse and remand with instructions to permit the House to intervene as a defendant in the proceeding. We note that upon intervention "[a]n intervenor must accept the record and pleadings as he finds them and cannot raise new issues, although he may argue the issues as they apply to him as a party." *Glisson*, 531 So. 2d at 998.

REVERSED and REMANDED.

MAKAR, J., concurs in result and concurs in part with opinion; OSTERHAUS, J., concurs in result with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

MAKAR, J., concurring in result and concurring in part.

At issue is whether the Florida House of Representatives has a sufficient legal interest to intervene as an additional party-defendant in a challenge to the constitutionality of section 381.986(8)(e), Florida Statues, which relates to the organizational

8

structure of medical marijuana treatment centers.[1] The answer seems clear but is muddled a bit by a few complications.

First, the House was on the sidelines and waited close to a year to intervene, moving to do so rapidly only after the trial court had issued a temporary injunction against the Department's enforcement of the statute, holding that the plaintiffs had established a substantial likelihood of success on the merits. The trial judge was troubled that the House sought to join the litigation after the primary legal battle had already been lost; and he felt it odd that the House, which frequently seeks to *not* be a party-defendant in other civil cases, wanted to accept that responsibility in this case under the existing circumstances.

Both those sentiments are understandable, but countervailing factors ameliorate those concerns. The first of which is that the House, if allowed to intervene, would not be able to change the parameters of the litigation on its own. *Nat'l Wildlife Fed'n Inc. v. Glisson*, 531 So. 2d 996, 998 (Fla. 1st DCA 1988) ("An intervenor must accept the record and pleadings as he finds them and cannot raise new issues, although he may argue the issues as they apply to him as a party."). Instead, the House's intervention would be subordinated to the ongoing litigation absent a ruling to the contrary by the trial court. Fla. R. Civ. P. 1.230 ("Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."). Granting intervention would give the House a seat at the litigation table, albeit without a host's authority to alter the

---

[1] The statute states that a "licensed medical marijuana treatment center shall cultivate, process, transport, *and* dispense marijuana for medical use," which parallels to some degree the definition of so-called Dispensing Organizations (DOs) that— under pre-amendment medical marijuana laws—were required to be vertically integrated (i.e., they must perform every function in the production, processing, distributing, and retail sale of medical cannabis). Floridians, however, rejected this structure in adopting the medical marijuana amendment, using an *or* rather than *and* in replacing DOs with newly-defined medical marijuana treatment centers. *See* art. X, § 29(b)(5), Fla. Const.

menu or the order of courses absent judicial permission. Intervention—even after preliminary relief had already been granted—would not disturb the orderly final adjudication of this important case; a lot of plaintiffs were allowed to intervene late in the game, making it all the more important that the House be given at least equivalent treatment in the final adjudicative process.

Had the House waited until entry of final judgment, of course, intervention would be disfavored. *Williams v. Nussbaum*, 419 So. 2d 715, 717 (Fla. 1st DCA 1982) ("As a general rule, it is too late to apply for intervention after a final decree has been entered. However, intervention should be permitted at such a time if the interests of justice require it."). Waiting and seeking to intervene only after an injunction is entered, while a potentially dicey strategy, should not preclude the House from intervening without delay or disruption of the proceedings, which the trial court can closely control and limit in scope. *Glisson*, 531 So. 2d at 998 (intervention upheld where trial set approximately 6 months later and subsequently rescheduled; movants "assure[d] the court that their desire to intervene would not delay or disrupt the proceedings.").

The trial court was also puzzled about why the House wanted to accept the responsibility of party-defendant status in this constitutional challenge. Ordinarily, the legislative branch is not a necessary party in litigation challenging the constitutionality of a statute, which is why the House and Senate frequently seek to extricate themselves as parties from this type of litigation based on the general rule that the "proper defendant in a lawsuit challenging a statute's constitutionality is the state official designated to enforce the statute." *Atwater v. City of Weston*, 64 So. 3d 701, 703 (Fla. 1st DCA 2011). Which is not to say that legislators and the Governor "are improper parties in *all* declaratory actions challenging the constitutionality of legislative or executive acts." *Id.* at 704 (emphasis added). Indeed, they are necessary parties in some cases and permissible parties in others.

The House of Representatives is no ordinary litigant, making its desire to intervene and accept the benefits and burdens of party status in this litigation a significant step. Its role, even if limited to the case's existing legal parameters, is of great importance,

particularly given the subtle, if not subliminal, institutional tensions between the executive and legislative branches at play in this case. Not so subtle is the constitutional authority the people granted to the Department of Health, an executive branch agency, to effectuate the production, distribution and sale of medical marijuana in a safe manner, a grant of power that diminished the legislative branch's otherwise plenary authority on this topic. This grant of power, however, is offset by the recognition that the Legislature may pass laws that are *consistent* with the medical marijuana amendment: borne thereby was a delicate political waltz between the executive and legislative branches as to the relative powers of each in the field of medical marijuana.

More subtle is the question of who, between the Department and the legislative branch, is in charge of the defense in this litigation. Consistent with the general rule, the Department—as the agency designated to implement the medical marijuana laws in question—has been the sole and principal party-defendant since the onset of the litigation in December 2017. That does not mean that the Department's constitutional powers, set forth in the medical marijuana amendment, will necessarily fully align with the Legislature's constitutional power to enact legislation consistent with the amendment. The Department's litigation goals in this case potentially may dovetail with those of the legislative branch, making intervention by the House or Senate duplicative or unnecessary (as the trial judge believed). But potential changes in litigation priorities and interpretive tensions can alter the balance and require modifications, such as occurred when the U.S. Department of Justice announced it would not defend the constitutionality of the Defense of Marriage Act, resulting in the House of Representatives intervening with private counsel to do so. *See* Memorandum of Points and Authorities in Support of the Unopposed Motion of the Bipartisan Legal Advisory Group of the U.S. House of Representatives to Intervene for a Limited Purpose, *Windsor v. U.S.*, No. 1:10-cv-8435 (BSJ) (JCF) (S.D.N.Y. Apr. 18, 2011), 2011 WL 3164126 (unopposed motion of bipartisan advisory group of U.S. House of Representatives to intervene as party defendant to defend DOMA on equal protection grounds).

Different priorities and inter-branch tensions exist in this case. Here, counsel for the House told the trial judge that it sought intervention to defend its legislative powers and that, although the

11

Department's lawyers were "doing a fine job defending the Department of Health," a "separation in interest in part" existed between the two. For example, House counsel said the Department "potentially or I think actually has taken the position in the past that without the statute or without legislative involvement, the Department . . . still would have the authority to make substantive rules or constitutional regulations to regulate the entry. The House takes the position that that's not true" because the medical marijuana amendment did not grant the Department "policymaking authority." Though made aware that a conflict of legal positions existed between the Department and the House, the trial judge denied intervention, saying he was "sure the House is fully capable of giving guidance to the Department of Health as to proceedings in the case," which was inaccurate. Instead, the unique tension between the Department and the House as to each's respective powers made it all the more important that the House be heard.[2]

One needn't conclude that "the Legislature's basic constitutional power to legislate appears now to be imperiled" to see that intervention should have been granted under the circumstances. In a sense, the Legislature's basic constitutional power to legislate is always altered whenever a substantive amendment is made to the Florida Constitution. Additions to the state constitution—such as those dealing with a minimum wage, smoke-free workplaces, maximum class sizes, and even the cruel and inhumane treatment of pregnant pigs—each displaced the Legislature's basic constitutional power to legislate on such topics to some degree and do not violate the single subject rule for citizens' initiatives. *In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471, 478 (Fla. 2015) ("[T]he fact that [a] branch of

---

[2] This tension perhaps was heightened by the October 24, 2018, announcement of then-candidate Ron DeSantis that he would "finish implementing Florida's medical marijuana constitutional amendment so sufferers of chronic pain have access to an alternative to the use of opioids." *Help Floridians Struggling with Opioid Addiction*, RON DESANTIS: SECURING FLORIDA'S FUTURE, https://rondesantis.com/healthcare/ (last visited Sept. 10, 2019).

government is required to comply with a provision of the Florida Constitution does not necessarily constitute the usurpation of the branch's function within the meaning of the single subject rule.") (alteration in original) (citing *Advisory Op. to Att'y Gen. re Protect People, Especially Youth, From Addiction, Disease, & Other Health Hazards of Using Tobacco,* 926 So. 2d 1186, 1192 (Fla. 2006)). These types of constitutional amendments, which reflect the political will of Floridians, become super-statutes that restrict legislative powers in the same way as other limitations set forth in the state constitution; they cannot be changed by statute.[3]

The medical marijuana amendment is no different—it displaced, but did not imperil, basic legislative powers. That's particularly true when one considers the medical marijuana amendment explicitly acknowledges the Legislature's role to enact laws consistent with the amendment's language. Art. X, § 29(e), Fla. Const. ("(e) **Legislation**. Nothing in this section shall limit the legislature from enacting laws consistent with this section."). Rather than imperil, the medical marijuana amendment embraces legislative action consistent with its purpose; indeed, the vast bulk of medical marijuana legislation has not been challenged as being inconsistent with the

---

[3] Judge Osterhaus, who claims the panel's opinion affirming the injunction in this case has "downgraded" legislative power, ignores this point. The injunction panel unanimously held that the plaintiffs were likely to succeed on their claim that the legislature's use of *and* in section 381.986(8)(e) directly conflicts with the medical marijuana amendment's use of *or* in defining medical marijuana treatment centers. *And* and *or* have very different meanings. Indeed, the constitution was amended in 1998 to change the prohibition against "cruel *or* unusual punishment" to a prohibition against "cruel *and* unusual punishment," a change that "raise[d] the bar on the part of a defendant by requiring proof of both prohibitions rather than one or the other." *See* Art. I, § 17, Fla. Const. (commentary to 1998 amendment). The legislature can no more change the *or* in the medical marijuana amendment to *and* by statute than change the *and* in the constitutional prohibition on "cruel and unusual punishment" to an *or*. The same could be said for any number of constitutional provisions, e.g., increasing maximum class sizes in the constitution by statute.

amendment. *See* §§ 381.986, .987, .988 & .989, Fla. Stat.[4] Because it explicitly acknowledges the Legislature's power to enact laws consistent with the constitution, it is unsurprising that our supreme court concluded that the medical marijuana "amendment *does not substantially alter or perform the functions of multiple branches*" nor does it "*have a substantial impact on legislative functions or powers.*" *In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d at 477 (emphasis added). Had the amendment left no room for legislation, or created a "fourth branch" of government, it would not have made the ballot. *In re Advisory Op. to the Att'y Gen.-Save Our Everglades*, 636 So. 2d 1336, 1340 (Fla. 1994) ("Viewed in its entirety, the initiative creates a virtual fourth branch of government with authority to exercise the powers of the other three on the subject of remedying Everglades pollution."). That said, the House needn't show its basic constitutional powers are imperiled to belatedly intervene in this litigation.

In conclusion, the Florida House of Representatives should have been allowed to intervene in this proceeding, a result in which I concur. Though I do not join Judge Thomas's opinion, I concur in those parts holding that the House had a separate and distinct interest in this case apart from the Department of Health that supported intervention, that it had an actual, cognizable interest in the proceedings, and that it must accept the record and pleadings as they exist and not raise new issues after intervention.

OSTERHAUS, J., concurring in result.

---

[4] Section 381.986 alone is ponderous, comprising approximately 40 single-spaced pages and over 13,000 words setting forth definitions, standards, procedures and regulatory programs governing the medical use of marijuana, including subsections on qualifying medical conditions, qualifications for physicians and medical directors, physician certification, a medical marijuana use registry, caregiver registration, identification cards, medical marijuana treatment centers (almost half the entire section), inspections/administrative actions, preemption, penalties, unlicensed activity, exceptions, and fines/fees. Only a few of its provisions are at issue in this litigation.

I concur with the holding that the House may intervene as a defendant. *See* Fla. R. Civ. P. 1.230 (providing that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention"). This case raises important issues involving the role of the Legislature within the constitutional structure of our state government. The rulings in this case—including the temporary injunction decision of this court—appear to have downgraded the Legislature's work and its constitutional authority to legislate below that of the executive agency. The Florida Supreme Court did not recognize the amendment, article X, section 29 of the Florida Constitution, to have this effect. *See In re Advisory Opinion to the Att'y. Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471, 477 (Fla. 2015 (determining that "[i]f the proposed amendment passes, the Department of Health would perform regulatory oversight, which would not . . . have a substantial impact on legislative functions or powers"). Because the Legislature's basic constitutional power to legislate appears now to be imperiled, the House quite obviously satisfies the legal threshold for intervention.

———————————————

Adam Scott Tanenbaum, General Counsel, Joseph Michael Maida, Assistant General Counsel, Tallahassee, for Appellant.

Ari H. Gerstin of Akerman LLP, Miami; Katherine E. Giddings and J. Martin Hayes of Akerman LLP, Tallahassee; Jonathan S. Robbins of Akerman LLP, Fort Lauderdale; Jason B. Gonzales of Shutts & Bowen, LLP, Tallahassee; Luke Lirot of Luke Lirot, P.A., Clearwater; for Appellees.